## E. L. Martin & Co. et al. v. Hurt's Adm'r.

(Decided June 9, 1933.)

JOHN S. DEERING and HUNT & BUSH for appellant.

WM. HILL MACKEY, B. J. BETHURUM and L. L. WALKER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Between 5:30 and 6 p. m. on May 13, 1931, a one-seated Plymouth sedan automobile driven by Paul Hurt, while traveling south on state highway No. 27, collided with a three-ton empty truck owned by appellant and defendant below, E. L. Martin & Co., traveling north on the same highway at a point about 5 miles south from Nicholasville, Ky. Hurt sustained injuries, from the effects of which he soon died, and appellant and plaintiff below was appointed and qualified as administrator of his estate and brought this action in the Jessamine circuit court against the owner of the truck,

and the driver thereof, to recover damages to the estate of Paul Hurt for his alleged negligently produced death by defendants. The answer of defendants denied the negligence and interposed the defense of contributory negligence, which plaintiff denied, and upon trial of the case the jury, under the instructions given it by the court, returned a verdict against defendants in favor of plaintiff for the sum of $4,375. Defendants' motion for a new trial was overruled, and they prosecute this appeal.

Appellants' counsel in the very earnest brief they file on behalf of their clients argue but three grounds for reversal, and which are: (1) That the verdict of the jury is not sustained by the evidence and is flagrantly against its weight; (2) error of the court in permitting evidence to be introduced by plaintiff in rebuttal over defendants' objections and exceptions, proving that the deceased was not intoxicated at the time of the accident, and (3) error in submitting to the jury in instruction 1 certain duties of the driver of the truck when there was no evidence that they were violated by him. They will be disposed of in the order named.

1. In disposing of ground 1 it becomes necessary to make a brief statement of the facts. The point of the accident was about 1,100 feet south of the entrance to Fort Nelson Federal Cemetery along which the highway runs, and it occurred between two curves forming a figure similar to the letter "S" made by the highway at that place. The right hand of the decedent in traveling south the way he was going is referred to in the evidence as the "west" side of the highway; while the right side of the driver of the truck in traveling north as he was going is referred to in the record as the "east" side of the highway, and along which at the immediate point of the accident were barrier posts about 10 feet apart and connected with a chain as a protection against a slight embankment on that side at that point. The collision was at a point in the highway between the first and second of the barrier posts traveling north, and the front of the truck after the accident, according to all of the witnesses, was between those two posts; its right front wheel having scraped the first one in reaching that point. The body of it was at an angle of some twenty or twenty-five degrees from that side of the highway, with its left or western hind wheel not far

from the center of the macadam portion of the highway, the witnesses for the plaintiff stating that it was all the way from a few inches to 2 feet west of the center of the highway, while those testifying for the defendants place it slightly east of the center of the highway. It is apparently conceded that the relative location of the truck, as so described and as seen by the witnesses, was the precise one in which it was left after the accident. The automobile in which decedent was riding had its front near the barrier post with its body almost at right angles across the highway, and it bore indisputable evidence of the fact that its collision with the truck was at the right end of its front fender, while the point of the collision with the truck was against its fender and between its right end and the center of the truck. The indisputable physical facts as testified to by the witnesses, were that for some distance north from the point of the accident decedent's automobile was traveling on his right-hand or west side of the highway to the distance of some 30 feet north from the point of the collision, and that at the immediate time of the collision its tracks were almost at right angles across the highway, the tracks showing a swerve to the east.

There was also evidence of truck tracks, and which the witnesses swore were made by the colliding truck while traveling on the west side of the highway before reaching the point of collision and then verging towards its east side, thus bringing it in front of decedent's automobile while he was also endeavoring to reach the same side of the highway. However, it must be admitted that such testimony as it related to the location and the movements of the truck and course of its tracks immediately preceding the collision, is considerably weakened by the fact that other trucks had passed in both directions and some of them had parked and stopped at that point, immediately after the accident happened; so that the tracks attributed to the guilty truck were not clearly shown to have been made by it. But, notwithstanding the weakness of that testimony, the undisputed physical facts that we have narrated tend to establish the conclusion that the truck, just before the collision, was traveling on the left side of the highway contrary to the provisions of our statute relating thereto, and which constituted an encroachment upon

and a usurpation of that part of the highway that should be kept clear for travelers over it going south as deceased was moving. There was evidence that the deceased was traveling at a speed of anywhere between 30 and 35 miles per hour, and was descending about a 6 per cent. grade in the highway; while the truck was traveling at from 10 to 15 miles an hour and ascending the same grade. There was also evidence that at a point about a mile north of the place of collision the decedent was seen going in the direction of the fatal spot, and his machine was then swerving from one side of the highway to the other, but a witness who testified for plaintiff and who passed decedent but a short distance from the collision testified to no such movements at that time. The latter witness also passed the truck within a very short time after passing the automobile, and he stated that the truck when he passed it was on the west side of the highway or the left side of its driver, and that he (witness) passed it on its east side, as he was compelled to do, because of the wrongful location of the truck on his (witness) side of the highway, witness traveling south at the time.

The same witness also testified that he looked back after passing the truck and saw the collision. He stated that the decedent, in an effort to avoid colliding with the truck, turned to his left (or east), and that the driver of the truck, apparently realizing that he was on the wrong side of the highway, turned to his right also to the east side of the highway, and that about the time the front of his truck reached that side the collision happened. The testimony of that witness, if true, proves a clear case of actionable negligence on the part of the driver of the truck, but we must admit that the circumstances bearing upon the credibility of that witness are such as to largely discredit his statements. According to him, he witnessed the fatal crash, which was more or less severe, though he did not stop but continued on his journey. It was also developed that the automobile in which he was riding belonged to the brother of the leading counsel for plaintiff, and witness made no statement as to what he had seen to any one except that brother in whose employ it would appear he was then engaged, notwithstanding the tragedy created considerable excitement and comment in the community and among the friends and acquaintances of deceased. How-

·ever, such matters were for the consideration of the jury, and, if it had entirely discarded the testimony of that witness, we still think there was enough in the record to authorize the submission of the negligence of the driver of the truck to the jury and to sustain its verdict in finding him guilty thereof; also enough in the record to exculpate the deceased from the charge ·of contributory negligence. The evidence as given on the trial (excluding that of the eyewitness, supra) is susceptible, by critical analysis, to an interpretation excusing the driver of the truck from negligence, and which was confirmed by his testimony; and also of convicting the decedent with negligence in attempting to cross the highway from its west to its east side. But it may be likewise interpreted as supporting an opposite finding, which latter the jury adopted, and we conclude that under the prevailing rules of practice we are unauthorized to hold either that the verdict was not sustained by sufficient proof or that it is flagrantly against the evidence. In addition thereto, if the jury believed the testimony of the eyewitness to which we have referred, then the verdict would be abundantly sustained by the proof heard in the case. We are therefore of the opinion that this ground is without merit.

2. It will be noted that defendants introduced testimony to show that about a mile north of the point of the collision the deceased was driving his automobile in a manner strongly indicating that he was intoxicated, and, after they closed their testimony, the rebuttal testimony was introduced by plaintiff of which complaint is made in ground 2. That testimony was introduced to rebut the presumption or inference sought to be drawn from the testimony given by defendants' witness, who testified to the wabbling action of decedent's automobile from one side of the highway to the other just before reaching the point of collision, and it is perfectly clear to our minds that the testimony complained of in this ground was competent and proper to rebut such presumption or inference, and that the court did not err in permitting it introduced.

3. Ground 3 is directed to a criticism of instruction 1 given by the court to the jury, and in support thereof learned counsel cite and rely upon the case of Standard Oil Company v. Thompson, 189 Ky. 830, 226 S. W. 368, 369. The criticized instruction said, inter

alia: "It was the duty of the driver of the truck to have it under control, to run it at a reasonable rate of speed considering traffic conditions and surrounding circumstances, to keep a lookout for vehicles upon the highway, and to travel upon the right side of the center of such highway in the direction in which the truck was going, whenever possible, and unless the left side of such highway is clear of all other traffic or obstructions and presents a clear vision for a distance of at least 150 feet ahead," etc. The instruction is criticized because it is insisted that there was no evidence that the truck was traveling at any other than "a reasonable rate of speed," or that the driver did not keep "a lookout ahead," or that he did not have his truck "under control." Counsel is correct as to the condition of the proof, except there was evidence, perhaps, that the driver of the truck was not "on the lookout ahead," since he testified that he did not see the approaching automobile of decedent until it was within 60 feet of his truck, when the physical facts show that at the place of collision he could have seen the approaching automobile ahead of him a much greater distance.

In the relied on Thompson Case an instruction of similar and almost identical import, given under the same absence of proof as to some of the duties of the driver of the guilty vehicle, was involved and was attacked upon the same ground. In disposing of it we said: "This point is well taken, and inasmuch as the case must be reversed on another ground, it would be well upon a retrial, in the absence of evidence on these two propositions, to omit the italicized words from the instruction." The italicized words in the criticized instruction in that case were: "Running his truck at a reasonable rate of speed," and "of having it under reasonable control." The verdict against defendant in that case was not reversed because of the errors complained of in the criticized instruction, but was ordered upon an entirely separate ground and one clearly authorizing a new trial. We held that the immaterial error in the criticized instruction should be corrected upon another trial so as to conform to the precisely correct rule of practice, although it is clear from the opinion that, if the criticized error in that instruction had been the only ground relied on for a reversal, the judgment would have been affirmed. So, in this case,

the two expressions in the criticized instruction of having the truck "under control" and the duty "to run it at a reasonable rate of speed" may have been unauthorized under the evidence heard at the trial, and technically should have been omitted, but we are cited to no case holding that their erroneous incorporation in the instruction under the circumstances would create material prejudice authorizing a reversal of the judgment solely therefor.

Wherefore, perceiving no error prejudicial to the substantial rights of the defendants, the judgment is affirmed.