# Bowling Green-Hopkinsville Bus Co. et al. v. Montgomery.

March 17, 1939.

As Extended on Denial of Rehearing June 16, 1939.

838

R. W. Keenon and E. J. Felts for appellant.

H. A. Birkhead and Taylor & Milam for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

On September 1, 1936, the appellee was a passenger on the bus of appellant traveling from Nashville, Tennessee, to Russellville, Kentucky. Appellee was seated on the left side of the bus on the first seat behind the bus driver with his left arm resting on or about the window sill of the bus. It appears that the window was raised a few inches.

At a point a few miles south of Russellville at about 7 o'clock P. M. the bus collided with a truck approaching from the opposite direction owned by Lo-

gan Dawson and driven by Bernice Parsons and as a result of the collision appellee's left arm was severed.

To recover for his injuries and expenses incurred in the treatment of same, appellee brought this suit against appellant bus company and Logan Dawson, owner of the truck, alleging that his injuries sustained in the collision were caused by the joint and concurrent negligence of the drivers of the respective vehicles. The case was tried by a jury and resulted in a verdict in favor of appellee as against the bus company for the sum of $4,350, for the personal injuries, plus the sum of $1,115 doctor bills, hospital bills, and other expenses incurred in the treatment of his injuries; and also a verdict as against Dawson for the sum of $2,250. The bus company only has appealed.

Many grounds of reversal are assigned in motion and grounds for a new trial, many of which are insisted on in brief of appellant, and which will be discussed in the course of the opinion.

It is first insisted that the evidence tends to show that the collision was caused by the sole negligence of the truck driver and no negligence shown on the part of appellant's bus driver; and, secondly, if it be conceded that the evidence is sufficient to take the case to the jury as against appellant, the verdict is flagrantly against the evidence.

The collision occurred on a state highway, the hard surface or metal of which is 18 feet wide. It is shown that the total width of the truck is 7 feet 4 inches and the width of the bus is 7 feet, totaling 14 feet and 4 inches, leaving a space of 3 feet 8 inches of the metal of the road after deducting the total width of the two vehicles. The collision was what is known as a side collision—the corner of the body of the truck striking the bus window at the left of appellee. The driver of each vehicle claims that he was operating his vehicle to the right of the center of the road, each claiming that the other operator crossed the center of the road to the left. As we have seen, there was more than sufficient space of the traveled portion of the road for the two vehicles to have cleared each other if each one had been operating to its right of the center of the road, and the solution of the case hinges on the question as to which driver operated his vehicle to the left of the center of the road, or, perhaps whether both drivers

negligently crossed the center line to their respective left sides at the point of the collision.

The bus was traveling north and the collision occurred a few feet north of the intersection of a dirt side road intersecting the highway from the east, or on the right of the bus the way it was proceeding. The evidence is conflicting as to the distance from the intersection of the side road, to which the collision occurred, some witnesses stating that it was about 10 feet and others fixing the distance as far as 40 or 50 feet. In scraping or repairing the side road some dirt had been pulled out onto the main highway a distance of approximately 3 feet and a thickness of 8 inches to a foot high. It is the theory of appellee that in order to avoid driving over this dirt, the bus driver turned to his left to avoid the dirt and after clearing it and before he cut back to his right side of the road the bus collided with the truck. However, there is no direct evidence to the effect that the bus driver did turn to his left to avoid the dirt referred to. Harold Fuqua, the driver of the bus, testified that he saw the dirt but ran the right wheels of the bus over it, keeping to his right side of the road and was operating the bus to the right of the center of the road at the time of the collision. One or two passengers on the bus also testified that the bus was to the right of the center of the road at the time of the collision, but they assign no particular reasons for their observation of the location of the bus as to whether it was strictly keeping its side of the road.

A number of witnesses testified concerning their observations of the dirt in question at the intersection of the side road, stating that there were no tracks or signs on the dirt indicating that the bus or other vehicle had crossed over it. It appears that the side road had been scraped on the day of the accident and the dirt in question was more or less fresh. A number of witnesses testified that they noticed the imprints or tracks of automobile tires having pulled around the dirt, striking the edge of it only. It is true that a number of witnesses who testified that there were no tracks of vehicles crossing the dirt examined the premises on the following morning, but one of them stated that the dirt was in the same condition as it was when they saw it on the evening or night before. But we find no objections to this testimony. While Fuqua, the bus

driver, testified that he drove the right wheels of the truck over the dirt, yet no witness testifies that they actually saw tracks indicating that any vehicle had been driven over it. Appellant seeks to refute or avoid the effect of the testimony of the witnesses who testified concerning the condition of the dirt in reference to no vehicle tracks being shown on same, and in support of its position cites certain opinions of this court holding that automobile tracks seen by witnesses some time after an accident occurred is not competent or at least unreliable, since other vehicles with similar tires might have made the tracks discovered by such witnesses. However, it must not be overlooked that in the present case the witnesses did not testify to tracks seen on the dirt and undertake to say whether or not the tracks were made by the bus at the time in question. They merely testified that from their observations *no tracks at all* were on the dirt. The absence of any vehicle tracks on the dirt is indeed persuasive, at least, that the bus did not cross it.

It also appears that broken glass was found in the road at or near the point of the collision. The majority of the witnesses who observed the glass testified that it was to the right of the center of the truck's side of the road, indicating that the truck was to its right of the center of the road at the time of the collision. Of course, the location of glass falling to the road from a collision of vehicles may not be very reliable evidence in respect of the exact location of the vehicles at the time of the collision, but such physical facts are competent for the consideration of the jury. It is also shown that the truck had coal dust on it and some of the dust was found on the road at the point of the collision. However, on this point, also, the evidence is conflicting, some witnesses stating that a portion of the dust was on the truck's left of the center of the road, while others stated that it was on the right. Bernice Parsons, the truck driver, testified that when he was approaching the bus the lights on it obstructed his vision or blinded him and he set his eye strictly to the right side or edge of the road, and he testified positively that he was operating his truck to his right of the center of the road at the time of the collision. While on the other hand, as we have already stated, the bus driver states positively that he was operating the bus to his right of the center. We have already noted the

width of the road and the total width of the two vehicles render it impossible for the collision to have occurred had each vehicle been operated to its right of the center.

Will Bloodworth, testifying for the appellee, stated that he was at Adairville at the time of the collision, but when he heard of it he and Mr. Dawson, the owner of the truck, immediately went to the scene of the collision about 8:30 or 9 o'clock, which was an hour and a half or two hours after the collision occurred. He saw broken glass in the road about 10 or 12 feet north (the direction the bus was going) of the pile of dirt at the intersection of the side road and the glass was to the bus' left of the center of the road and on the truck's right of the center. He also testified that the truck had new tires on it known as dual or double tires, and he observed tracks or imprints of dual tires on the dirt shoulder of the road beginning 10 or 12 feet north of the pile of dirt and continued the same distance beyond the dirt, indicating that the truck was being operated to the extreme right of the road, even beyond the hard surface, at the time of the collision. The witness was asked about the width of the truck and said he was present when it was measured but he did not remember the measurements. He was asked if he knew who had the measurements of the truck and he answered, ''No sir, unless the insurance company might have them.'' Counsel for appellant objected to the answer and the court sustained the objections and admonished the jury not to consider the answer and counsel for appellee withdrew the question. This reference by the witness to the insurance company is insisted on in brief of appellant as being prejudicial. However, under the circumstances and in the manner the reference to insurance came about and, for the further fact that the court sustained objections to the answer and admonished the jury not to consider it, we do not think it constituted a reversible error. We have often held that where counsel intentionally gets the fact to the jury that a defendant is insured it is reversible error; while, on the other hand where a witness voluntarily makes reference to insurance without anything indicating that counsel intentionally solicited the answer or brought it about for the purpose of informing the jury that the defendant was insured, we will not reverse a case on that ground.

Ed Martin, a passenger on the bus who was a witness for appellee, testified that just before the collision he looked out the front window of the bus and happened to notice the lights of the truck as it came over the hill and that the driver dimmed the lights and immediately the bus driver dimmed his lights, then the truck's lights came on bright again and the bus' lights came on bright and the lights of both vehicles were on bright at the time of the collision. It is insisted for appellee that the driver of the respective vehicles engaged in what is known among motorists as a "light battle" and is evidence of negligence of both drivers. There may be some merit in this contention. The same witness further said that immediately before and at the time of the collision the bus slowed down to a very slow speed but he could not state definitely the position of either vehicle on the road with reference to the side it was on, but that the truck traveled only a few feet after the collision and stopped on the right-hand side of the road.

In addition to the physical facts we have the evidence of Parsons, the truck driver, who testified positively that he was operating the truck to the right of the center of the road at the time of the collision. It is thus seen that all the evidence—the testimony of witnesses and physical facts and circumstances, are in sharp conflict.

The case of Taylor et al. v. Vaughan, 236 Ky. 102, 32 S. W. (2d) 724, 725, is pretty well in point. In that case the collision occurred after dark and Taylor testified that he saw the other car approaching but did not observe anything unusual about it, and so far as he observed it was apparently on its side of the road. However, he stated positively that he was on his right side of the road because he was watching the right-hand side of the road but did not pay any attention to the other car, because he said that if he stayed on his right side of the road he could not help what the other fellow did. At the conclusion of the evidence the trial court directed a verdict in favor of defendant and upon appeal to this court the judgment of the lower court was reversed. In that opinion, it is said:

"In support of the ruling of the trial court it it pointed out by counsel for appellee that none of appellants' witnesses testified that the Vaughan car

was on the wrong side of the road, but all of them stated that the Vaughan car appeared to be on the right-hand side of the road. In view of this situation, it is claimed that all the jury could do was to guess as to the cause of the accident, and, that being true, there was nothing to submit to the jury. We are unable to agree with this contention. The accident could have happened in only one of two ways—either because the Taylor car was on the wrong side of the road or the Vaughan car was on the wrong side of the road. Though the witnesses for appellants say that the Vaughan car was apparently on its side of the road, they testified emphatically that the Taylor car at the time of the accident was on its side of the road. If it be true that the Taylor car was proceeding on the right of the center of the road, then the Vaughan car must have been driven to the left of the center of the road. Therefore, appellants' witnesses made out a case for them when they testified that the Taylor car was on the right side of the road, and the evidence of the witnesses for Mrs. Vaughan that her car was moving on the right side of the center of the road merely completed the issue to be determined by the jury.''

Even though it be conceded that the weight of the evidence tends to show that the bus was on its proper side of the road, yet, in view of the positive evidence of Parsons and the physical facts and circumstances, under the authority of the Taylor case, supra, and other like cases which might be cited, we are unable to conclude that the evidence is insufficient either to take the case to the jury or to support the verdict.

It is further insisted for appellant that certain other physical facts are conclusive that, instead of appellee having his arm on the inside of the bus with his elbow resting on the window sill, his arm was protruding out the window and exposed to the danger of passing traffic, and he was guilty of contributory negligence as a matter of law, and relies upon certain cases holding that it is contributory negligence for anyone to have his arm hanging out or protruding from the window of a motor vehicle while traveling upon the highway. It appears from the evidence of the witnesses and from a photograph of the bus filed with the record that the glass of the window in which appellee's arm was rest-

ing when he was injured was not broken, nor were there any scratches or signs on the upright of the window indicating that the truck came in contact with that window, but other windows behind appellee were broken and considerable damage done to the side of the bus. It may be conceded that these facts are persuasive at the least that appellee's arm was protruding out of the window. It appears that the corner of the body of the truck struck the bus, and we are unable to conclude that it was physically impossible or, indeed, highly improbable for the corner of the truck to have struck appellee's arm even though it was inside the window. We are not unmindful of the rule that physical facts are controlling as against testimony of witnesses when the physical facts are such as to render the testimony of the witnesses impossible; but, when it is reasonably possible for an accident or other act to have occurred as described by eye witnesses, such evidence is controlling so long as it does not come within the rule that it is impossible under the laws of physics and laws of nature.

In Reo Bus Lines v. Dickey, 219 Ky. 307, 292 S. W. 791, 792, the facts as to the particular point under discussion are practically the same as the facts in the present case. Dickey was a passenger on a bus which collided with another vehicle and resulted in the severance of her arm. She was seated on the left side of the bus, and, according to her evidence, her arm or elbow was resting on the window sill at the time of the collision. The contention there made, as is here made, was that it was impossible for her arm to have been struck by the colliding vehicle unless it was protruding or dangling outside the window, and therefore she was guilty of contributory negligence as a matter of law and barred from recovery. In disposing of that question we said:

"The appellant's contention that the appellee was guilty of contributory negligence as a matter of law is bottomed on its theory that her arm was protruding or dangling outside the window. Conceding, without deciding, that, if this had been so, she would have been guilty of contributory negligence as a matter of law, yet we find there was an abundance of evidence to support her contention that she had her arm inside of the bus, with just her elbow resting on the window sill. The court by

instruction No. 3 practically told the jury that, if it believed the facts on this question, to be as the appellant contended, then the appellee was guilty of contributory negligence. But certainly under the contrariety of evidence here appearing it was for the jury to say whether the facts were as appellant contended or as appellee contended. If they were as the appellee contended, it cannot be said that she was guilty of contributory negligence as a matter of law. There is no merit in appellant's first contention.''

Instruction ''G'' given by the court at appellant's request submitted to the jury the duty of appellee as follows:

''It was the duty of the plaintiff to so seat himself in the defendant's, Bowling Green-Hopkinsville Bus Company's bus as to have no part of his body or arm that would extend outside, or beyond the bus; and if you believe from the evidence that the plaintiff's arm was extended outside or beyond the window of said bus and that but for this fact he would not have been injured, then you will find for the defendants, although you may believe that the driver of the defendant, Dawson's truck, and the driver of the bus, both or either of them were negligent as set out in Instructions No. 1 and No. A.''

By this instruction the question of whether appellee's arm was protruding from the window was definitely submitted to the jury and if it had believed that his arm was protruding from the window, evidently it would have found for appellant.

In view of the positive evidence of appellee that his arm was inside the bus, and his evidence being uncontradicted by any witness or otherwise except the circumstances that the window showed no sign of contact with the truck, we are unable to conclude that these circumstances so completely destroy the evidence of appellee as to justify a peremptory instruction in favor of appellant, or to render the verdict of the jury flagrantly against the evidence.

It is next insisted that the court erred in refusing to set aside the swearing of the jury on account of the absence of one, Isadore Klein, or to permit his affidavit to be read to the jury as his evidence. It appears that Klein was summoned as a witness for appellant and was

in the courthouse on the first day of the trial, but on the second day when he was called by appellant he was absent and his personal attendance could not be had. It appears that he had theretofore made an affidavit which appellant offered as his evidence, in which he stated that on the night of the accident he was traveling north on the same highway on which the accident occurred, between Adairville Bridge and the point where he later learned a truck struck a bus; that he passed a truck which was more than in the middle of the road and crowded him off onto the shoulder; that the truck which passed him had a spot light on the left side and when he dimmed his lights the truck driver did not dim his; that this was the only vehicle which passed him between the bridge and where the accident occurred, and said:

"I would think it was the same truck which struck the bus, but of course I cannot be positive."

It is to be noticed that the affidavit does not state the distance from the point where he met the truck referred to and the place of the accident. Also, he merely expresses an opinion that it was the same truck which struck the bus. Even though the affiant had stated that he met the truck referred to in his affidavit within a close distance of the scene of the accident, it is doubtful that his observation and experience with the truck would have been competent evidence. However, be that as it may, since it is not shown whether he met the truck within close proximity to the scene of the accident or whether it was many miles away, very clearly the offered affidavit was incompetent and the court did not err in rejecting it.

It is next argued that the court erred in certain instructions given to the jury, and particularly instruction No. 1 which defined various duties of the driver of the bus with relation to having the bus under control, speed, lights, etc., as required by the statutes. It is insisted that the court should not have instructed the jury upon any issue except on the question of which side of the road the respective vehicles were on at the time of the collision.

There is no evidence that the lights of the bus were insufficient or otherwise failed to measure up to the requirements of the statute; nor is there any evidence tending to show that the bus was being operated at an

unreasonable or improper rate of speed at the time of the collision. It may be conceded that the determinative question in the case as to the bus is whether or not it was being operated on its proper side of the road. This being true, it was unnecessary and perhaps a technical error to instruct the jury upon any duty of the operator of the bus as required by the statute, not in issue under the evidence.

In Major Taylor & Company v. Harding, 182 Ky. 236, 206 S. W. 285, 287, it was alleged in the petition that the driver of the truck was inexperienced and incompetent to operate the truck and that his employer, Major Taylor & Company, knew, or by the exercise of ordinary care should have known, of its driver's inexperience and incompetence to operate the truck, and the court instructed the jury upon that issue, although there was no evidence produced on the trial of the case tending to prove that allegation of the petition. Upon appeal of the case it was insisted that it was prejudicial error to instruct the jury upon that issue since it was not supported by any evidence. It was held that the giving of such instruction was unnecessary and perhaps a technical error, but not prejudicial. It is pointed out in that opinion that the jury could not fail to have known that there was no evidence whatever supporting the ground of negligence set out in that instruction and therefore could not have been misled by it; and that "it would be unreasonable and highly technical to assume that the jury, in place of deciding the case upon the issues made by the evidence that furnished ample ground for their decision, should have rested it upon a ground which there was no evidence to support * * *". Citing Section 756 of the Civil Code of Practice, which provides that a judgment shall not be reversed or modified, except for an error to the prejudice of the substantial rights of the party complaining thereof.

Also, in E. L. Martin & Company et al. v. Hurt's Adm'r, 250 Ky. 235, 62 S. W. (2d) 465, the court instructed the jury upon the numerous duties of operators of motor vehicles on the highways as set out in the statute, many of which were not supported by any evidence. A reversal was insisted upon because the court instructed the jury upon matters not supported by any evidence, relying upon the case of Standard Oil Company v. Thompson, 189 Ky. 830, 226 S. W. 368. It is pointed out in the Martin case, supra, that the

Thompson case was not reversed upon the ground that it was prejudicial error to instruct the jury on issues unsupported by the evidence, but that instruction was criticized as being unnecessary and a technical error, and that it should be corrected upon another trial so as to conform to the correct rule of practice.

It is thus seen that, while this court has criticized the practice of trial courts instructing juries upon issues not supported by evidence, yet we have consistently held that to do so is not prejudicial error, particularly in the class of cases under discussion, since each act of negligence instructed on is a separate one, and if there is evidence to support any one or more of them and no evidence to support others, it is not reasonable to assume that the jury would base a verdict upon the acts wholly unsupported by the evidence, rather than upon the acts supported by the evidence. But under the facts and circumstances of some cases, even including the class of cases under consideration, such unnecessary instructions upon issues not supported by evidence might prove to be confusing to the jury and possibly harmful, and, for this reason, courts should confine the instructions to issues only tended to be supported by at least some evidence, but not instruct upon issues where there is no evidence to support them. Despite many criticisms of this court concerning such practice, it appears that a number of trial courts fail to observe our suggestions or criticisms and still pursue the habit of giving to juries these unnecessary and technically erroneous instructions. We now again caution trial courts concerning this habit in the hope that in the future they will pursue the precisely correct rule, viz., that of instructing juries only on issues supported by evidence.

In view of the facts and circumstances in this case and the authorities supra, we do not think the error complained of is prejudicial.

The next point raised by appellant is that the court admitted incompetent and irrelevant testimony in favor of appellee. It appears that appellee took the depositions of a Mrs. Norse and David Gray who were passengers on the bus at the time of the accident. In the course of the examination of the witnesses counsel asked them or one of them if the bus company had settled their claims, and they answered in the affirm-

ative. When the depositions were read before the jury the court sustained objections to the question and an-. swer relating to settlement of the claims. But appellant insists that notwithstanding the ruling of the court, the fact was gotten to the jury and might have made the impression that the settlement of the claim was an acknowledgment of liability on the part of appellant. Appellee insists that the witnesses were extremely favorable to the bus company and appeared to be biased in its favor and the question relating to settlement of their claim was for the purpose of showing their interest or motive in their apparent partiality for appellant. It is competent to show interest or motive of witnesses, or circumstances which may influence them, and if counsel in good faith asked the question for the purpose of showing reason for the witnesses' apparent interest in behalf of appellant, it was competent. We do not think there is any merit in this contention.

Other alleged incompetent evidence relates to certain occurrences after the collision. Appellee testified that he immediately got off the bus and fell in the ditch and his wounded arm stuck into the ground; he got dirt, gravel, etc., in the wound. He said he then walked around in front of the headlights of the bus to look at his arm and it was bleeding profusely. It was also brought out in the evidence that the driver of the bus left the scene of the accident in an effort to reach a telephone to call doctors and ambulances and to render assistance to appellee. Counsel for appellee insists that the bus driver left appellee upon the highway and did not render him assistance. The bus driver testified that he did all he could do in procuring medical aid as soon as possible and rendered him all the assistance he could under the circumstances. The court gave Instruction "E" which was offered by appellant, in which the court told the jury that if they believe from the evidence that the driver of the bus left plaintiff at the scene of the accident, yet they cannot find for the plaintiff in any sum on that account against appellant if they believe from the evidence that the driver of the bus and the manager of the bus company did what an ordinarily prudent person would have done under the circumstances for the purpose of procuring aid for the plaintiff.

In view of the instruction of the court submitting this question to the jury under appropriate instruction,

we do not think the evidence relating to what occurred after the accident was prejudicial.

It is also insisted that the court erred in overruling appellant's motion to permit the jury to view the scene of the accident. It appears that the trial was had more than a year after the accident. There is no showing that the condition of the road in respect of the physical facts and conditions testified to by the witnesses were the same, and, in the circumstances, they could not have been the same. The court did not err in overruling the motion.

The next complaint is directed to alleged improper argument of appellee's counsel to the jury. It appeared in the original bill of exceptions that counsel for appellant objected to the argument and excepted to the court's adverse ruling. However, that bill of exceptions was corrected and the corrected bill duly signed by the trial judge fails to disclose any such argument or any objection or exceptions thereto. Hence, we are precluded from considering the alleged improper argument of counsel.

Lastly, it is insisted that the verdict is excessive. The total amount recovered against appellant and the owner of the truck, less expenses, is $6,600. It appears that appellee was 59 years of age at the time of the accident and was an employee of the Louisville & Nashville Railroad Company at a salary of $160 per month and that he would have been eligible for retirement on a pension at the age of 65. Thus, it is obvious that at the salary he was earning, approximately $2,000 per year, he would have earned a sum considerably in excess of the verdict before he attained the age of 65 years. It is shown that since the loss of his arm appellee lost his position with the Railroad Company and at the time of the trial he had earned only $17 since the accident. Also, appellee was confined in the hospital for 81 days and according to his evidence he suffered great physical pain and mental anguish, and is still suffering from the injuries. He says that it appears that he yet has his arm and he feels pains like pushing the flesh up from his fingernails and that these pains are still very excruciating. In view of all the facts, it is at once obvious that the verdict is not excessive.

Finding no prejudicial error, the judgment is affirmed.