## Railway Express Agency v. Bailey.

March 15, 1949.

As Extended on Denial of Rehearing

June 24, 1949.

Doolan, Helm, Stites & Wood for appellant.

Julius Leibson and Lawrence Grauman for appellee.

OPINION OF THE COURT BY JUDGE HELM—Affirming.

Appellee was awarded a verdict of $5,000 for personal injuries. This appeal is from the judgment entered on that verdict.

On the evening of January 19, 1947, a 1½ ton truck belonging to appellant left its depot at 12th and Maple Streets in Louisville with a load of doughnuts for the General Baking Co., located on 15th Street south of Broadway. It proceeded north on Maple Street to Broadway and west on Broadway to 15th Street. It was being driven by Alfred Tilmus, an employee of appellant. Another employee, John Croghan, was riding in the truck.

A misty rain was falling. There were traffic lights at the intersection of 15th and Broadway. As the truck approached the intersection, the red light was against it. The driver brought his truck to a stop in the traffic lane nearest the center of the street. When the light changed to green for Broadway traffic, the driver proceeded to make a left turn onto 15th Street.

Appellee, fifty-two years of age, had been working for the Standard Sanitary Manufacturing Co. for several years. On the evening of January 19, 1947, he was going to visit his sister. Mollie Rauls had an appointment to meet appellee on the corner of 15th and Broadway and to accompany him on the visit to his sister's home.

Appellee lived in the Highlands and was riding a west bound Broadway bus which stopped at the northeast corner of 15th and Broadway, where plaintiff alighted. Mollie Rauls was standing on the southwest corner of 15th and Broadway waiting for appellee.

There was an electric traffic signal in the center of the intersection of 15th and Broadway. When the signal showed green for north and south bound traffic, appellee walked from the northeast corner of 15th and Broadway across Broadway to the southeast corner. When he got to the southeast corner, he wished to walk westwardly to the southwest corner where Mollie Rauls was standing. He waited on the southeast corner for the traffic light to turn to green for east and west traffic. When the light changed, he started walking in the cross-

walk from the east side to the west side of 15th Street. When appellee was but a little more than four feet from the west curb of 15th Street, appellant's truck began to straighten out so that its lights were thrown into 15th street. Tilmus did not see Bailey until the latter was about five to eight feet directly in front of his truck in the crosswalk, showing Tilmus was not keeping a proper lookout. The driver applied his brakes immediately and brought his truck to a stop before it passed beyond the crosswalk, but not in time to avoid striking the appellee and knocking him down with considerable force. The men on the truck dismounted and they and Mollie Rauls helped appellee to the sidewalk. The driver called the police. When they arrived, they offered to take appellee to the hospital but he declined to go, requesting that he be taken to his home. He was taken home on the bus by Mollie Rauls, who put him to bed and stayed at his home that night administering to his needs.

Appellee's right shoulder and hand hit the street. After he was struck, he "got numb" on his right side. His right wrist was injured and he complained of an injury in his chest.

He was in bed about two months and away from work two months and seven days.

Dr. Carter was called the morning after appellee was injured and treated him for approximately five weeks at his home. The doctor saw him regularly at his office for three or four weeks after he got out, then he saw him about once or twice a month.

When Dr. Carter went to appellee's home the morning after the accident, he found him in bed. His examination disclosed a swollen and painful right shoulder and right hand. He had some swelling on the right side of his chest. He was complaining of pain in his back just below "where this swelling was. * * * He had a pretty good sized bruise on his right buttock."

At the trial on April 28, 1948, Dr. Carter stated that appellee had some definite weakness in his right shoulder and still has trouble with his back; that appellee "complains of pain in the right side of his chest. I am unable to find anything wrong with it." The doctor

thought. he probably had a bruise and maybe some muscles torn loose both in his back and side and in his chest. He did not have any broken ribs. As to his chest, the doctor says, "The twist as he fell * * * may have pulled some of those muscle fibers loose inside."

Along in April following the accident, Dr. Carter found that appellee began to be rather sluggish mentally; that he was slower in answering questions and would become a little confused at times; that he was "lots slower" than he was formerly. The doctor thought he might possibly have some blood condition but a Wassermann test was negative. Dr. Carter says that in his opinion appellee is not able to do any work requiring heavy manual labor.

Dr. Kirk examined appellee for the purpose of testifying. He found him "rather wobbly all over. * * * The man was not able to cross his legs without help of the hand, that is, to bring the right leg over the left. * * * He seemed to have some limitation of movement in his back; * * * his speech was very hesitant and jerky." In Dr. Kirk's opinion, "This man is permanently disabled insofar as manual labor is concerned."

Walter Johnson, foreman of the Standard Sanitary Manufacturing Co., a white man, testified that appellee, a colored man, was before his accident a general laborer, moving machinery, cleaning "catch" basins, taking mud out of the pit, wheeling concrete and using a sledge hammer; that he was an excellent workman, that his physical condition appeared to be good. Johnson saw appellee at his home following his injury.

When appellee returned to the plant, Johnson sent him back to his former employment but found that he was unable to do it. He gave him easier work, such as sweeping and mowing the lawn in the summertime. Johnson says, "He can't wheel heavy loads any more."

Dr. Carter's bill was for $250. Appellee proved loss of time amounting to $342. The circuit court's instructions permitted the jury to award appellee $592 in special damages. Assuming that the jury gave him the entire award for special damages, as appellant points out, "We have an award of $4,408 for pain, suffering and permanent injury, if any."

Appellant asks a reversal of the judgment of the circuit court because:

(1) The trial court erred in instructing the jury that it was the absolute duty of the driver of defendant's truck (a) to give a signal with his hand of his intention to turn his truck and (b) to give notice of the movement of the truck by sounding his horn.

(2) The damages awarded by the jury are so excessive as to indicate that they were given under the influence of passion and prejudice.

The trial court's instruction No. 2 was as follows:

"It was the duty of the driver of the truck to exercise ordinary care in driving his truck, and that duty included the following duties, to give reasonable and timely warning of his intention to turn south into 15th Street by extending his left hand and arm from the left side of his truck, to give notice of the movement of his truck by sounding the horn, to keep a lookout for anyone who might be in danger from the movement of his truck as he made the turn from Broadway into 15th Street, to have his truck under reasonable control and to yield the right of way to Bailey crossing 15th Street."

KRS 189.380 provides:

"No person shall turn a vehicle from a direct course upon a highway until the movement can be made with reasonable safety, and only after a clearly audible signal has been given by sounding the horn if any pedestrian may be affected by the movement or after giving an appropriate signal as provided by subsection (2), if any other vehicle may be affected by the movement."

The "appropriate signal" provided in subsection 2, above referred to, is a hand signal. By the terms of the statute, hand signals need only be given if any other vehicle is to be affected by the movement.

Appellant cites Jefferson's Adm'x v. Baker, 232 Ky. 98, 22 S. W. 2d 448, 449, a case in which the facts were similar to the facts in this case. There this court said:

"The duty of signalling enjoined by this section of the Statutes is for the benefit of other vehicles using

the street, and has no application to a state of facts as is here presented.''

Appellant urges that immediately after the word ''horn'' in the foregoing instruction, the trial court should have added the words, ''if any pedestrian may be affected by the movement,'' and cites Newbold v. Brotzge, 209 Ky. 218, 272 S. W. 755; McElrath v. Barnett, 274 Ky. 771, 120 S. W. 2d 216, and other cases.

But we do not reach these questions as to the instruction because, so far as appears from the record, appellee was not guilty of any negligence nor was this an unavoidable accident. That being true, the trial court should have directed a verdict for appellee except as to the damages.

Appellant insists that the damages awarded are excessive.

In Ouerbacker Coffee Co. v. Koop, 212 Ky. 824, 280 S. W. 146, 147, we said:

''While the verdict is large, the jury saw and heard the witnesses, and the conclusion of 12 men selected from the different walks of life, seeing and hearing the witnesses, is the best means the law has ever devised for settling such questions, and their finding will not be disturbed on appeal unless so excessive as to indicate mistake on their part or passion or prejudice.''

Also, in Aetna Oil Co. v. Metcalf, 300 Ky. 817, 190 S. W. 2d 562, 563, we said:

''There is no rule of law fixing a monetary measure of damages for pain and suffering in personal injury cases. But the matter must be left to the sound discretion of the jury, whose verdict will not be disturbed unless it appears to have been influenced by partiality or prejudice, or that the jury have been misled as to the merits of the case.''

Here the verdict is large, but in cases such as this, usually the best we can do is to leave what is fair and right to the discretion of the jury. We are not authorized to and do not interfere with the judgment and discretion of the jury unless the award appears to be disproportionate to any reasonable consideration of the proved injury and its results and to strike the court at

first blush as not having been reached in calm deliberation and without passion or prejudice, or some element which tended to bias the minds of the jurors.

From the facts and circumstances shown in the record, we have reached the conclusion that the amount of the verdict does not require us to apply the rule and hold that it is excessive.

The judgment of the circuit court is affirmed.