## CRAWFORD v. ALEXANDER.

Court of Appeals of Kentucky.
June 19, 1953.

·Allen, McElwain, Dinning & Clark, Louisville, for appellant.

King & Porter, Louisville, for appel-lee.

STANLEY, Commissioner.

We consider these points argued for the reversal of a judgment for the plaintiff in an automobile collision case, namely (1)

the defendant was entitled to a directed verdict under the res ipsa loquitur rule, (2) error in overruling his motion to discharge the jury when a witness indicated there was insurance indemnity involved, and (3) excessive damages.

An automobile driven by the defendant, now appellant, Mrs. Carol W. Crawford, ran into the back of a bus on which the plaintiff, now appellee, was a passenger. She was knocked from the seat onto the floor of the bus and suffered severe back injuries. The accident occurred on the Poplar Level Road in a Louisville suburb as the bus was pulling away from the curb at Thurston Avenue. The defendant, called by the plaintiff as a witness, testified she owned the automobile and had run into the rear of the bus. The main circumstances of the accident were brought out on cross-examination by her own attorney. She had been trailing the bus and the car brakes had properly functioned. She had had no trouble in stopping at Ardmore Drive, a block away from the scene of the accident. She had followed the bus a distance of at least 20 feet at approximately 20 m. p. h. When the bus stopped at Thurston Avenue, she applied the brake but when the pedal was pushed down about half way the resistance failed. She tried "pumping it" but that did no good. She could not have gone around the bus because of heavy oncoming traffic on the left and a ditch on the right. Before she could apply the emergency brake, the car hit the bus. She told the driver at once and a few minutes later a police officer that her brakes had suddenly failed. The officer tried the brake and there was none. He found some brake fluid near or under the left front wheel of the car. The bus driver stated the impact was "great" and that it jerked his neck and threw his body against the steering wheel. The entire front of the automobile was damaged. It was, as stated by the bus driver, "hung up with the bus, underneath" and the baggage compartment was "caved in pretty bad."

The automobile was a 1940 or 1941 Chevrolet. Mrs. Alexander's husband had driven it most of the time until about six weeks before the accident. She had no personal knowledge as to when the car had been inspected by mechanics and there was no evidence that it, particularly the brakes, had ever been checked or tested. Expert witnesses described the functioning and operation of hydraulic brakes to be that when the pedal is pushed down the piston in a master cylinder forces fluid through four lines of copper and rubber to cylinders at the wheels and that applies the brake.

M. M. Klemenz, a garageman of great experience, was introduced by the plaintiff. He testified that when the fluid gets low in the master cylinder, the brake pedal "goes way down" but pressure may be partially restored by "pumping the pedal up and down." It is impossible, he stated, for the fluid or oil in an hydraulic brake to escape from the cylinder suddenly and without some warning or previous indication of faulty brakes. The witness had never known of the oil going out all at once. He described the machine as having rubber hose or tubes running from a master cylinder to each of the wheel cylinders and stated that if one is broken, the fluid will be let out when the brake is applied. Upon a hypothetical question the witness expressed the opinion that the presence of brake fluid under the car immediately after the collision indicated that a tube had been broken by the impact.

Two experienced garagemen testified for the defendant that hydraulic brakes fail suddenly when they fail at all. The rubber cups in the cylinder get soft and pressure will push a hole in them all at one time. The defendant's automobile had been repaired in the garage of one of these witnesses. He testified the cylinder cups "were bad and let fluid by the cylinder and when you pushed on the brakes it would go past and you didn't have any brake at all." There was no fluid in the cylinder when the car reached his garage. There was a leak in the cylinder cup "and that let the fluid go by the piston and come out the back of the cylinder and onto the ground or wherever it (the car) might be." The fluid would go towards the front of the car. The defendant's car had no break in the system except in the cups. The wit-

ness expressed the opinion the collision did not cause the "cylinder to go bad."

In rebuttal, another garage service man, Paul Jones, testified that a master cylinder cannot fail "all at one time unless it is torn loose" and otherwise to substantially the same effect as did Mr. Klemenz.

There is conflicting evidence as to whether a hydraulic brake system should be or is customarily inspected for defects.

In general, it is said in applying the rule of res ipsa loquitur that where a defendant goes forward with evidence which overcomes the traversible inference of negligence the inference is destroyed and the defendant is entitled to a directed verdict. But the context may not be discarded or the qualification disregarded. It is only when there is no evidence rebutting the justifiable inference of the fact of negligence or when that which is introduced is of such character and force as to completely overcome and leave no reasonable presumption or inference whatever. The evidence must be of a conclusive character, undisputed and uncontradicted or show physical circumstances which reduce the situation almost to a certitude. Black Mountain Corp. v. Partin's Adm'r, 243 Ky. 791, 49 S.W.2d 1014; Dunning v. Kentucky Utilities Co., 270 Ky. 44, 109 S.W.2d 6. The doctrine and its application are fully considered and described in Lewis v. Wolk, 312 Ky. 536, 228 S.W.2d 432, 16 A.L.R.2d 974.

The rule as to the submission of a case where the evidence leaves an issue of fact prevails under the res ipsa rule. Thus, it is said in McGraw's Adm'r v. McGraw's Adm'r, 293 Ky. 722, 169 S.W.2d 840, 842:

"The jury are as much the judges of the inferences and conclusions to be drawn from the proven facts as they are of the facts themselves and if the inferences or conclusions drawn by them are such as might be drawn by a reasonable mind, the jury's finding, based on such inferences or deductions, should not be disturbed even though the inferences or deductions may not have been those we would have drawn had we been sitting as triers of fact."

In the present case, we have the defendant's positive testimony that the collision was due wholly to sudden mechanical failure of the brakes of her car which reasonable care and prudence could not have anticipated. She is supported by technical testimony that such failure is not only possible but that it could not have been otherwise than sudden. But this is matched by contradictory technical testimony. The mere spoken word of the plaintiff as to the cause of the collision is scarcely enough to demolish the reasonable inference of negligence. Such fallible testimony of itself is not conclusive. Its acceptance as sufficient to exonerate the defendant would make it an easy matter to avoid the consequences of neglect. The defendant's testimony was so regarded in Lewis v. Wolk, supra. But in this case there is also to be thrown into the balance in behalf of the inference of negligence evidence of a defective brake system of a nine or ten year old automobile which had bcome faulty through deterioration; that the break in the lines may have been caused by the collision itself; that the defendant undertook to pump the pedal, thereby indicating some previous experience from a lessening or failure of the brake pressure. We conclude, therefore, that no error was committed in submitting the case to the jury. Partin's Adm'r v. Black Mountain Corp., 248 Ky. 32, 58 S.W.2d 234, 93 A.L.R. 606; Droppelman v. Willingham, 293 Ky. 614, 169 S.W.2d 811; McFarland v. Bruening, 299 Ky. 267, 185 S.W.2d 247; Humphries v. Gray, 305 Ky. 206, 203 S.W.2d 8; Schechter v. Hann, 305 Ky. 794, 205 S.W.2d 690; Smith v. Hamm, 314 Ky. 339, 235 S.W.2d 437.

When the plaintiff's physician was asked if he had seen his patient after a certain time, he answered, "I did until Saturday and then the insurance adjuster—". Her attorney interrupted to say, "Leave that out" and repeated his question. In overruling the defendant's motion to discharge the jury on this account, the court gave an admonition that the statement was

improper, should not have been made and that the jury "must not consider that statement for any purpose whatsoever under any circumstances." As is submitted by the appellant, the closeness of a case or the amount of the verdict is often considered in determining whether the injection of the insurance idea into a trial is prejudicial. See Kaufman-Straus Co. v. Short, 311 Ky. 78, 223 S.W.2d 367. But this voluntary and perhaps inadvertent statement of the witness may have referred to an accident insurance adjuster as well as to an automobile indemnity insurance representative. We do not regard it as reversible error. Chambers v. Hawkins, 233 Ky. 211, 25 S.W.2d 363, and cases cited; Heil v. Seidel, 249 Ky. 314, 60 S.W.2d 626; Huls v. Dalzell, 252 Ky. 13, 66 S.W.2d 28; Bowling Green-Hopkinsville Bus Co. v. Montgomery, 278 Ky. 837, 129 S.W.2d 535.

We come to the claim that the verdict for $5,000 is excessive.

The force of the impact has been stated. The jolt knocked the plaintiff between the seats. She struck her head and arm on the seat in front of her and wrenched her back, which caused her to become "dizzy and kind of blind like." She was taken home suffering a great deal and went to her doctor's office that night. He administered an opiate. In two or three days the doctor had her removed to a hospital where she stayed three weeks. She continued to suffer pain in her back, arm and side and after returning home had to sleep on a board placed in the bed. When she went back to work ten weeks after the accident her back still bothered her and she couldn't lift anything. This had continued up until the time of the trial. The plaintiff's employer, Mrs. Crain, a registered nurse, visited her in her home after the accident and found her suffering with pain, mentally confused and passing blood, which she attributed to an injury to her kidney. She testified to the efficient and faithful service of the plaintiff as her cook before the accident. She had not missed a day from work in five years. She was not able to resume all her work, especially in getting around. It was necessary for Mrs. Crain to hire a helper and to reduce plaintiff's salary from $32 to $28 a week.

The plaintiff's physician, Dr. Edgar T. Dennis, testified that plaintiff's back and neck were sprained and she suffered pain in her abdomen immediately following the accident. She gave the doctor a history the next day of having been vomiting for an hour or so and of passing blood, which was substantiated by a urinalysis. He had continued to have "light treatments" and sedatives given his patient. The doctor had seen her two days before the trial in October, 1951, which was more than a year after the accident, and found "an area of tenderness in the back and still very limited motion." In his opinion the plaintiff has a permanent disability as a result of the accident.

The plaintiff proved she had incurred expenses amounting to around $300.

Dr. Charles W. Jefferson, a surgeon, examined the plaintiff at the defendant's request two or three weeks after the accident. He found her suffering with a sprained back, slight swelling of the right forearm and a congenital condition of the kidneys. He testified, "I think it ought to get well alright."

The respective attorneys cite cases holding excessive or not excessive verdicts for personal injuries of a similar character and extent to those of the plaintiff in this action. The appellant points especially to Ken-Ten Coach Lines v. Hughes, 304 Ky. 692, 202 S.W.2d 172, a decision rendered in 1947 that $4,000 was an excessive verdict. The appellee points to Railway Express Agency v. Bailey, 310 Ky. 781, 220 S.W.2d 997, 999, sustaining a verdict for $5,000. An extensive collection of cases relating to the amount of verdicts in personal injury cases is given in 16 A.L.R.2d 3.

In considering previous awards as a guide for determining the propriety of a present verdict, the amount must for purposes of comparison be adjusted to compensate for intervening changes in the value of money. Recognition of the increased cost of living or impaired purchasing power of a dollar will be considered in

justification. "The value of the sum awarded is to be measured not by the number of dollars but by its comparative ability to furnish the necessities of life." Note 12 A.L.R.2d 621.

■ The attitude of this court as one of review and the degree of reluctance to interfere with a verdict are reflected by many statements and opinions. It is thus stated in Railway Express Agency v. Bailey, supra:

"Here the verdict is large, but in cases such as this, usually the best we can do is to leave what is fair and right to the discretion of the jury. We are not authorized to and do not interfere with the judgment and discretion of the jury unless the award appears to be disproportionate to any reasonable consideration of the proved injury and its results and to strike the court at first blush as not having been reached in calm deliberation and without passion or prejudice, or some element which tended to bias the minds of the jurors."

■ We are of the opinion the award cannot be regarded as so excessive that it requires a reversal of the judgment.

Judgment affirmed.