## Combs v. Stewart.

Nov. 27, 1945.

Napier & Napier for appellant.

C. A. Noble for appellee.

Opinion of the Court by Judge Dawson—Affirming.

This is an appeal from a judgment awarding Fifteen Hundred Dollars to the appellee, Boyd Stewart. On the filing of motion and grounds for new trial the appellee filed a remittitur of Five Hundred Dollars, leaving the judgment in the amount of One Thousand Dollars.

The facts are, as appear from the record, that about seven o'clock on October 18, 1939, the appellee Stewart and a friend, Jack Fields, were driving a Ford automobile eastwardly along State Highway No. 80, in the town of Combs. They had just driven on to the highway from a side road but had progressed approximately 135 feet along the highway. The appellant, driving a one and a half ton truck, was going westwardly along the highway. At the point of collision there is a sharp, steep curve and the appellee's witnesses testified that the truck was traveling from fifty to sixty miles an hour and was on the left side of the white line in the center of the road. In an effort to avoid the collision appellant pulled the truck to the right, causing the front end to miss the car but the side of the truck skidded into the Ford automobile, doing considerable damage to the car and seriously injuring the appellee.

There is considerable conflict in the testimony as to whether the Ford automobile was on its right side of the highway, but the testimony of Stewart is supported by two apparently disinterested witnesses who state that the truck was at least eighteen inches on the wrong side of the highway. The finding of the jury is of course binding on us and the evidence amply supports its verdict.

The question on this appeal is whether the court erroneously gave instructions as to permanent injuries. The only evidence as to the injuries sustained is appel-

lee's own testimony. There is no medical testimony in the record. The appellee's testimony is as follows:

"Q. 54. Were you injured in that collision? A. Yes, sir.

"Q. 55. Tell the jury where you were hurt and how? A. My arm was broken.

"Q. 56. Which arm? A. Left arm.

"Q. 57. And where? A. Right about my muscle, right there.

"Q. 58. You are pointing—below the shoulder and above the elbow? A. Yes, sir.

"Q. 59. Between that muscle and shoulder blade, is that where you are pointing? A. Yes, sir.

"Q. 60. You receive any other injuries? A. Broke my nose. Broke my jaw right there.

"Q. 61. You have any scar there where it broke your nose? A. No, but there is a knot there.

"Q. 62. You had your finger on your nose—tell the jury where that is—the knot you spoke of? A. Yes, sir.

"Q. 63. That is on which side? A. Left hand side.

"Q. 64. You say it broke your jaw bone? A. Yes, sir.

"Q. 65. Which side of your face? A. Left side.

"Q. 66. You receive any other injuries? A. Yes, sir, knocked three of my teeth out and one right there and they took twelve or fourteen stitches in my mouth.

"Q. 67. You ever had those teeth put back? A. No.

"Q. 68. Still gone? A. Yes, sir.

"Q. 69. You receive any other injuries? A. No, only just cut my ear into there.

"Q. 70. Which ear was that? A. Left one.

"Q. 71. What if anything was done for you at the hospital? A. Well, I—

"Q. 72. What treatment did you receive? A. They put a brace on me around my waist to hold my arm and patched my face up around here, then I went back home.

"Q. 73. What time did you go back home? A. I guess I got home about 12:30 or 1:00.

"Q. 74. After you went home, what did you do following that time? A. Well, I laid in the bed most of the time.

"Q. 75. And how long? A. I couldn't stir around for three weeks without someone holding me.

"Q. 76. And you speak of a brace there on your arm, what kind of brace was that? A. Steel one.

"Q. 77. How long did that remain on you? A. Six weeks.

"Q. 78. At the end of that six weeks were you able to work? A. No, I come back to the hospital and they put my arm in a swing and put a brace on it and I wore that six weeks.

"Q. 79. Six more weeks, you mean? A. Yes, sir.

"Q. 80. Twelve weeks you had a brace on? A. Yes, sir.

"Q. 81. Tell the jury whether or not you had any pain as a result of these injuries? A. Yes, I couldn't eat only drink soup for two or three weeks—maybe longer than that. Couldn't swallow it, couldn't open my mouth. I had to take a straw and suck soup through it.

"Q. 82. Do you feel any effects of your injuries now? A. Yes, sir. My arm gives me trouble and my face.

"Q. 83. Your arm—tell the jury about that? A. I load coal down at Lennut, when I go to work and work straight for a while, it just about breaks into again.

"Q. 84. Were you at that time a coal loader? A. Yes, sir.

"Q. 85. How long had you been following that work at that time? A. Well, for four years at the time it happened.

"Q. 86. You say that happened here in Perry County? A. Yes, sir.

"Q. 87. And on the 18th of October 1939? A. Yes, sir.

"Q. 88. What doctor attended you at the hospital? A. Hurtfield, he is here at this hospital.

"Q. 89. Which hospital is that? A. Hazard.

"Q. 90. Any other doctor attend you there. A. Well, that one that died—I don't know his name—not long ago out there. That old doctor. I forget his name. Dr. Gross.

"Q. 91. That is Dr. Gross that is dead? A. Yes, sir, he dressed me.

"Q. 92. You know C. S. Jackson? A. Yes, sir, he dressed me.

"Q. 93. How often did they dress you after you received the first treatment and went home? A. Three times a week.

"Q. 94. Did you report to the hospital or did they come to see you? A. I reported up here.

"Q. 95. How long did you report up here for three times a week? A. I guess fiifteen or eighteen times, between fifteen and eighteen times.

"Q. 96. You are able to do as much work now as you did before then. A. No, sir."

From this testimony it is apparent that the appellee was seriously injured. In Coca Cola Bottling Company of Shelbyville v. Creech, 245 Ky. 414, 53 S. W. 2d 745, we said:

" * * * in order for an instruction to be prejudicially erroneous, the finding of the jury must give some reflection of that instruction * * *."

We have said that the giving of an instruction on punitive damage is harmless where the award appeared to be compensatory only. St. Bernard Mining Company v. Ashby, 164 Ky. 416, 175 S. W. 626.

In the recent case of Billiter & Shurtleff Coal Company v. Sam Luster, 301 Ky. 17, 190 S. W. 2d 683, the court refused to reverse a judgment because the circuit court had given an instruction on permanent injuries, saying that the jury's verdict reflected no consideration of the instruction as to the permanent injuries.

This case is similar to the case above cited. The jury's verdict of $1500 could not have reflected a consid-

eration of the permanent injury instruction. The remittitur of $500 was unnecessary. The injuries of the appellee would amply support a verdict of $1500.

While we feel that the instruction as to permanent injuries was erroneous, it clearly was not prejudicial and in conformity with the authorities cited we affirm the judgment of the circuit court.

Affirmed.