## Johnson et al. v. Commonwealth.

October 14, 1949.

Astor Hogg for appellants.

A. E. Funk, Attorney General, Zeb A. Stewart, Assistant Attorney General, for appellee.

JUDGE REES—Reversing.

Homer Johnson and Paul Johnson appeal from a judgment convicting them of the crime of voluntary manslaughter, and fixing the punishment of each at imprisonment for a term of eighteen years and one day.

Appellants shot and killed Millard Sizemore near a filling station on Pine Mountain in Harlan County on October 9, 1947. The deceased was hauling lumber over the mountain on a truck and, according to the evidence for the Commonwealth, Homer Johnson approached the truck when it stopped at the filling station. The truck started forward and Homer Johnson drew a pistol and fired into the cab. At about the same time Paul Johnson ran out of a store operated by the owner of the filling station, and fired into the cab of the truck with a shotgun. The truck rolled down the hill about 20 feet, off the road and into the ditch. When bystanders reached the truck Millard Sizemore, the driver and only occupant, was dead. A bullet had entered the back of his neck near the base of his skull, and several shotgun pellets had entered the side and back of his head. No weapon of any kind was found on Sizemore's person or about the truck. Homer Johnson claimed that as he approached the truck Sizemore apparently reached for a gun, and he shot Sizemore in self-defense. Paul Johnson testified that he heard the report of a pistol, and saw his brother on the ground near the truck. Believing that the occupant of the truck had shot Homer, he shot at Sizemore in defense of his brother. It is conceded that the evidence is amply sufficient to sustain the verdict.

Reversal of the judgment is sought on three grounds: (1) Incompetent evidence admitted and explanations of it in the presence of the jury by the Commonwealth's Attorney during the redirect examination of Martha Perry, a witness for the Commonwealth; (2)

erroneous instructions; and (3) misconduct of two jurors.

Martha Perry, an eyewitness to the shooting, made a strong witness for the Commonwealth. On her cross-examination she was asked if she had not been in jail with Janelle Saylor, and, after leaving the jail, had not written to Janelle a letter which was introduced. In the letter she asked Janelle to be present at the trial of Homer and Paul Johnson because "they may get me for lie swearing, and, honey, I have to swear a lie, if I don't I might get killed some time." The letter was introduced on her cross-examination for the purpose of affecting her credibility as a witness for the Commonwealth, and, if unexplained, would have indicated to the jury that her testimony on direct examination was false. On her redirect examination the Commonwealth's Attorney asked these questions and she made these answers: "Q. Now something was said about you being in jail, why were you in jail? A. For protection. Q. From whom were you being protected? A. Paul and Homer Johnson."

The defendants objected to the answers, and the Commonwealth's Attorney said: "They introduced that letter to show she was afraid and she might get killed. I want the jury to know who she was referring to—why she said she might get killed. The defense introduced it."

The attorney for the defendants then moved the court to set aside the swearing of the jury, and the motion was overruled. The evidence adduced on the redirect examination of Martha Perry was competent, and, under the circumstances, the statement of the Commonwealth's Attorney did not constitute misconduct on his part. The appellants invited the evidence and the statement by introducing the letter. It was essential to the prosecution that the statements in the letter be explained in view of the implications resulting from its mere introduction.

The chief criticism of the instructions is that they failed to tell the jury that they could find one of the defendants guilty and one not guilty, but a careful reading of the instructions discloses that this criticism is without merit. However, we find that instruction No. 4 on self-defense is defective in that it fails to state the law rela-

tive to Paul Johnson's right to shoot in defense of another. There was no evidence that Paul Johnson shot in his own defense, and his sole claim was that he shot in defense of his brother, Homer Johnson. Upon another trial the right of Paul Johnson to shoot in defense of his brother will be incorporated in the instruction on self-defense. McHargue v. Commonwealth, 231 Ky. 82, 21 S. W. 2d 115; Arnett v. Commonwealth, 137 Ky. 270, 125 S. W. 700; McQueen v. Commonwealth, 88 S. W. 1047, 28 Ky. Law Rep. 20; Gills v. Commonwealth, 37 S. W. 269, 18 Ky. Law Rep. 560.

In an affidavit accompanying a supplemental motion for a new trial, appellants alleged, and it is not denied, that during the preliminary examination of the jury panel each and every juror was asked by the court if he had ever been convicted of a felony, and all of the jurors answered in the negative; that two of the jurors selected to try the case had been convicted of felonies; that this fact was not discovered by appellants until after the trial, and they were thereby deprived of their right to challenge these jurors. Section 207 of the Criminal Code of Practice makes a conviction for a felony a cause of general challenge. It has been held in civil cases that a false answer of a juror on his voir dire which deprived a party of pertinent information, upon which his right of peremptory challenge depended, justifies the granting of a new trial. Eads v. Stockdale, 310 Ky. 446, 220 S. W. 2d 971; Drury v. Franke, 247 Ky. 758, 57 S. W. 2d 969, 88 A. L. R. 917. The Commonwealth cites and relies upon Mullins v. Commonwealth, 285 Ky. 804, 149 S. W. 2d 725, 726, where the court said: "* * * disqualification of a juror on the ground of a prior conviction of a felony, though a ground for challenge, is not sufficient, in view of our statute prescribing the qualifications of jurors, to warrant a setting aside of the verdict where such ground of challenge was not made when the jury was impaneled, and certainly so when it is not shown that appellant did not then know of such disqualification. Like any other disqualification, it may be waived."

Subsection 2 of Section 29.020, KRS, prescribes the qualifications of jurors, and subsection 3 provides: "The fact that a person not qualified served on a jury shall not be cause for setting the verdict aside, nor shall ex-

ceptions be taken to any juror for lack of qualifications after the jury has been sworn.''

This statute makes it necessary for a party to inform himself as to the qualifications of jurors before the jury is sworn in order that he may exercise his right of challenge, general or peremptory, but the statute does not apply where he has been misled by a false answer of the juror on the latter's voir dire, and he has thus been deprived of his right of challenge. In the Mullins case the juror was not asked whether he had ever been convicted of a felony, and the defendant was not misled by any misconduct of the juror. The Mullins case has no application here. As was said in Drury v. Franke, supra (247 Ky. 758, 57 S. W. 2d 985): ''* * * the voir dire is of service not only to enable the court to pass upon a juror's qualifications, but also in assisting counsel in their decision as to peremptory challenge; the right of challenge includes the incidental right that the information elicited on the voir dire examination shall be true; the right to challenge implies its fair exercise, and, if a party is misled by erroneous information, the right of rejection is impaired; a verdict is illegal when a peremptory challenge is not exercised by reason of false information, the question is not whether an improperly established tribunal acted fairly, but it is whether a proper tribunal was established; if false information prevents a challenge, the right is so disabled and crippled as to lose its essential value and efficacy, as to amount to its deprivation; the fact that a juror disqualified either on principal cause or to the favor, has served on a panel is sufficient ground for setting aside the verdict, without affirmatively showing that that fact accounts for the verdict.''

The judgment is reversed with directions to grant appellants a new trial.