CONLEY

v.

LOVELY'S ADM'R.

Court of Appeals of Kentucky.

June 11, 1954.

L. D. May, Pikeville, for appellant.

A. J. May and Hollie Conley, Prestonsburg, for appellee.

MOREMEN, Justice.

Appellee, Alto Lovely, administrator of the estate of Ivan Lovely, deceased, recovered damages against appellants, Dalton Ray Conley and Crit Conley, for the death of his son, resulting from an automobile accident when the truck—owned by Crit Conley and driven by his son, Dalton Ray Conley, with his consent and for a family purpose—left the highway and was wrecked. The judgment appealed from is in the sum of $10,000.

At the trial it was necessary for appellee to rely to a certain extent upon the testimony of Dalton Ray Conley because only the driver and deceased, Ivan Lovely, were in the car at the time of the accident. Appellee introduced various witnesses from whose testimony we may piece together a fairly clear picture of what transpired before the accident and then, before concluding, he read to the jury the deposition of Dalton Ray Conley which had been taken as if on cross examination. At the conclusion of all the testimony offered by appellee, appellants moved for a directed verdict. No evidence was offered in behalf of appellants and the case was submitted to the jury under appropriate instructions.

On this appeal appellants contended that the facts shown were such that there was no room for a reasonable difference of opinion among fair-minded men and that the court should have directed a verdict for them on the ground that Ivan Lovely was contributorily negligent as a matter of law.

The facts developed were these: Dalton Ray Conley, the driver of the truck, and Ivan Lovely, the guest, were both 17 years of age at the time of the accident. On Saturday night, January 25, 1953, Conley, who was out with his father's truck, drove to a restaurant at Garrett. The people who saw him there said that if he was drunk, they could not tell it from his actions. About midnight, he met the deceased, Lovely, and it was suggested that they go to a party on Jones Fork. Dalton said he and Lovely drank about one half pint of whiskey and this was the only intoxicant taken by either party that night. It is not too clear when they left Jones Fork but it must have been after a rather short time. From there they drove to Prestonsburg and went into a bus station where they had hamburgers. They left Prestonsburg and drove to Allen. Upon leaving Allen, they drove towards Pikeville where they stopped at a restaurant known as the Blue Bell. While at the Blue Bell, Conley became sick and vomited but he insists that he was not drunk. In this, he is borne out by every witness introduced who had observed them in the course of their meanderings. They left the Blue Bell and started home, drove back to Allen where they stopped again at an all night restaurant and there they met Zerr Chaffins and James Martin. The four persons left the restaurant at Allen together. Martin and Chaffins rode in Martin's car and Conley and Lovely followed them to a place about a mile from where the fatal accident occurred. Chaffins, who left Martin's car about a mile before the scene of the accident was reached, was walking along the side of the road towards his home when the Conley truck passed him at a speed he estimated to be about 65 miles per hour. Conley, in his deposition, stated that on the last leg of their journey he was driving at a speed of be-

tween 60 and 70 miles per hour on this mountainous road. There is a direct conflict in evidence concerning whether the road was dry or wet in spots on this night. The accident happened near Reed Branch, not far from where Ivan Lovely lived and, although the proof is rather vague on this point, it appears that Lovely made some kind of request to get out of the car some 100 yards or so before he reached the scene of the accident but that Conley was intent on going further up the road. Conley testified about this occurrence, which immediately preceded the accident, as follows:

"Q. Did you hit your brakes suddenly or hit a slick spot? A. All of a sudden I knew I was sliding off the road. Anyway, I was going over and everything blacked out.

"Q. You did not hit your brakes? A. No, I didn't have time.

"Q. You weren't trying to stop at that time? A. No, sir.

"Q. When he asked you to let him out to let him go home, were you going to take him back home or were you going to let him out down there on the highway? A. I was going on up to Garrett to see if the popcorn stand was open and if it wasn't open I was going to bring him back.

"Q. You had no intention of stopping there, You were going on to Garrett? A. I had already gone by and I thought I would go on up to Garrett."

Appellant, in support of his contention that Lovely was negligent in failing to make any remonstrance or effort to avoid the danger, relies upon Mattingly v. Meuter, 275 Ky. 294, 121 S.W.2d 676, 678, in which it was said:

"It may be negligence on the part of the guest to make no remonstrance or effort to protect himself or avoid the danger, where he has equal opportunity to see and an ability to appreciate the danger. Failing altogether to do any-

thing reasonable and practical may be in effect taking the chance, or acquiescing in what the driver is doing. Sharp v. Sproat, 111 Kan. 735, 208 p. 613, 26 A.L.R. 1421."

However, in neither the Mattingly case nor in the Sharp case, relied upon for authority, was it held that the question of contributory negligence should not be submitted to the jury. It was argued in the Mattingly case that the facts did not justify the giving of a contributory negligence instruction in regard to excessive speed. The opinion expressly approved submission to the jury of the question of contributory negligence. In the Sharp case, which is also similar in facts to the case here involved, the Kansas court held that it was error to refuse an offered instruction on contributory negligence. In both the Mattingly and the Sharp cases, the opinions disclose that the guest made no remonstrance whatsoever.

In the case at bar, there is definite and uncontradicted proof that before the accident occurred, Lovely requested that he be let out. Only the reason why he so requested is not certain. Upon motion of appellants, the court gave instructions Nos. 4 and 5 which, specifically and in detail, set out appellants' theory of the case concerning whether or not Lovely was contributorily negligent, which action we believe was proper.

The determination of the question of contributory negligence is ordinarily for the jury. It is only where the facts are such that there is no room for a reasonable difference of opinion among fair-minded men that the court should decide the question as a matter of law. Bryant v. City of Louisville, 306 Ky. 414, 208 S.W.2d 306.

We have no difficulty in concluding that this case was properly submitted to the jury.

Judgment affirmed.