**Ralph Gilbert HEDGES et al., Appellants,**

v.

**Taylor NEACE, Appellee.**

Court of Appeals of Kentucky.

Sept. 27, 1957.

As Modified on Denial of Rehearing Dec. 13, 1957.

Rose & Short, Beattyville, for appellants.

J. Douglas Graham, Campton, James Steven Hogg, Jackson, for appellee.

STANLEY, Commissioner.

The appeal is from a judgment for $6,000 for personal injuries and special damages sustained in an automobile collision on January 12, 1956.

The evidence of the appellee, Taylor Neace, is that as his farm truck, driven by his son, was going up a hill, a large gasoline transport trailer-tank came down the slippery, slightly curved hill in the center of the highway. The truck was driven as far as possible to the right, and the driver of the transport pulled over to his right and avoided striking the plaintiff's car with the tractor, but the tank trailer smashed into the truck. The sufficiency of evidence of negligence is not challenged on the appeal.

The grounds upon which a reversal of the judgment is sought are (1) the verdict is excessive and in that connection a permanent injury instruction was not authorized; (2) error in refusing to require the plaintiff to produce a copy of his income tax return; and (3) error in refusing the

defendant the right to file an amended answer.

The plaintiff is a farmer and livestock dealer. He was 54 years old at the time of the accident, was strong and in good health, never having, he said, been treated by a physician before this accident. He described the injury as being a terrific jerk or wrench of his head and neck, bruises and cuts of his whole body, especially about his shoulders and neck. He was attended by a local doctor every day or every other day for a period of twenty-five days and was then sent to an orthopedic surgeon in Lexington, Dr. W. K. Massie. Dr. Massie put a collar or brace on his neck, and he has since worn it day and night with only brief rest intervals. At the time of the trial, a little over three months after the accident, the plaintiff was still suffering severe aches and pains, especially when he changed the position of his head quickly. He trembles all the time and can scarcely sign his name because of it and finds it difficult to dress himself. When he gets on his feet he must stand a few minutes before he can walk and sometimes falls down. He can do no lifting or work of any kind. He has difficulty in sleeping, finding it necessary to take sleeping pills in order to do so.

Dr. Massie testified that when he examined the plaintiff on February 8 he had considerable pain in the neck and in the shoulder and hip when walking. He had some stiffness on rotation of the head, a mild tremor of the hands, considerable tenderness in the "transverse process to the side of the mid cervical spine or mid portion of the neck" and in the lumbosacral joint. As we understand the doctor's testimony, the plaintiff had suffered a severe sprain or strain of the neck and because of the condition, an "Elvin collar" was placed on his neck to restrict the motion. Dr. Massie had examined the plaintiff on the day he gave his deposition, April 10, two months later. He found his condition to have improved (as we gather from the technical language) but his neck was still stiff. In response to questions as to whether the condition was chronic, the doctor testified that such strains require several weeks to return to normal alignment and expressed the opinion that if Neace's neck continued to be restricted in movement, it should heal within a period of six weeks. The doctor felt the patient was progressing rapidly. In answer to the question whether it was a correct impression from his testimony that the plaintiff had "a condition of permanent vulnerability to injury" the doctor answered, "Well, that's true. Any ligament, if torn completely or partially, heals with scar tissue, and scar tissue is not elastic in that once it stretches, it remains stretched. Therefore, this patient, if he repeated this injury, would be more likely to have a recurrence of symptoms than he would if he never had had it."

 As a whole, the evidence of permanent injury is not certain or satisfactory. We have held that where evidence of such condition is merely speculative and shows no more than a possibility of a lasting impairment of earning power, an instruction authorizing damages therefor should not be given. H. & S. Theatres Co. v. Hampton, 300 Ky. 677, 190 S.W.2d 39; Black v. Bishop, 306 Ky. 524, 207 S.W.2d 22. However, if given, the instruction will not be regarded as prejudicial where the amount of the verdict is not disproportionate or excessive, considering all the other proven elements of damage and injury. This principle of appellate decisions has been stated and applied in many cases, among which are Louisville & N. R. Co. v. Bowman, 208 Ky. 39, 270 S.W. 471; Billiter & Shurtleff Coal Co. v. Luster, 301 Ky. 17, 190 S.W.2d 683; Combs v. Stewart, 301 Ky. 50, 190 S.W.2d 861. An award of damages is not to be regarded as excessive under the particular circumstances of a case unless it demonstrates, or at least indicates, that the jury allowed their sympathy or their passions or their prejudices or their perverse disregard of the law to mislead them.

■ The amount of damages for personal injuries in a particular case must be determined by the character and extent of the injuries and the consequences thereof. And in considering previous awards as comparative criteria for determining whether a present verdict is excessive, regard must be had for the intervening decrease in the purchasing power of money. Roland v. Murray, Ky., 239 S.W.2d 967; Crawford v. Alexander, Ky., 259 S.W.2d 476.

■ The amount of the verdict in this case, while generous, does not seem to us to be unfair or unjust recompense for the physical pain and suffering which the appellee had endured and may have been reasonably expected to undergo in the future in consequence of the personal injury and compensation for special damages incurred, which were around $1,000.

The petition alleged that the driver of the transport outfit, the defendant, Ralph Gilbert Hedges, was an employee of his codefendant, Direct Transport Company. The joint answer specifically admitted the allegation. During the course of the trial, the plaintiff called Hedges to testify as on cross-examination. The defendants' attorney was asked if he would admit Hedges was operating the vehicle as an employee of the Transport Company, and he responded that he would not. His attention was called to the fact that the answer admitted it. Thereupon, the defendants' attorney stated that was a mistake and offered to file an amended answer which alleged that Hedges was an independent carrier contractor. The court refused to permit the amended pleading to be filed.

The appellants contend this was an abuse of discretion. They point out that the plaintiff could not have been taken by surprise since Hedges and the president of the Direct Transport Company had given their depositions in the case some time before the trial, and they had then testified that Hedges was an independent contractor in that he owned the tractor and leased the tank trailer from the company and then hauled gasoline and fuel oils under a contract for a percentage of the rates which the company collected from its patrons. It was shown that Hedges operated a fleet of trucks and transports as a contract carrier.

■ Generally speaking, the court's discretion in allowing amended pleadings to be filed after the trial has begun is determinable by consideration of diligence on the one side and surprise on the other. In the preparation of his case, the plaintiff had the right to rely upon the admission of the answer. Had that concession not been made, the plaintiff would doubtless have anticipated the necessity of proving an employer-employee relationship and prepared his case accordingly. On the other hand, the defendants sought to introduce a new issue. They well knew of the relationship from the beginning. They had already filed one amended answer pleading contributory negligence. It seems to us that because of their dilatoriness in the matter the trial court did not abuse a sound discretion in rejecting the amendment. The case was submitted without qualification upon the theory that Hedges was an employee of his codefendant.

On cross-examination the plaintiff testified his earnings as a livestock dealer had averaged $300 a month for two years past. He stated that he did not remember the amount he had reported as his total receipts for income taxation. He was asked if he had a copy of his income tax return and answered that he had not. He was then asked if he would procure a copy and "furnish it to us." The court sustained objections to these inquiries. This is submitted as an error.

Several federal courts have ruled that where a party has retained a copy of his income tax return, his adversary in a discovery proceeding under Fed.Rules Civ. Proc. rule 34, 28 U.S.C.A. (like Kentucky Rule 34) is entitled to have him file the copy or otherwise obtain one and file it. See Reeves v. Pennsylvania Railroad Co.,

D.C., 80 F.Supp. 107. We think it was proper under the circumstances for the court to have sustained the objections. In the first place, the party testified he had not retained a copy of his return and in the second place, it was too late to have required him to obtain and produce a copy as a matter of discovery.

Finding no prejudicial error, the judgment is affirmed.