**Estill HERALD, Appellant,**

v.

**Ray GROSS, Appellee.**

**Estill HERALD, Appellant,**

v.

**Lizzie TURNER, an infant over the age of 14 years, by her father and next friend, Mose Turner, Appellee.**

Court of Appeals of Kentucky.

March 3, 1961.

O. J. Cockrell, Jackson, for appellant.

James S. Hogg, Jackson, for appellees.

PALMORE, Judge.

The appellees, Ray Gross and Lizzie Turner, were injured when a pickup truck driven by Gross and in which Miss Turner was a passenger collided with an automobile driven by the appellant, Estill Herald. Separate suits brought by the two appellees were consolidated for trial and resulted in

a verdict and judgment for Gross in the sum of $2,474 and for Miss Turner in the sum of $5,065.

The only questions raised on appeal are (1) whether the evidence justified instructions on permanent injury, (2) whether the damages awarded were excessive, and (3) whether a mistrial should have been declared when the physician testifying for plaintiffs mentioned sending his bill to "the insurance company."

■ The verdict for Gross reflected a $104 doctor's bill, $370 for damage to his truck, and $2,000 for his injuries. He testified that he suffered a black eye, two jaw teeth broken off, and a big knot on the side of his knee cap. The eye condition cleared up within two or three days. There was no further evidence about the teeth, 'and therefore nothing to show what was their condition before the accident or whether they could be repaired. The doctor described the knee injury as a bruise and swelling on the anterior medial surface. A blood clot formed under the skin just below the knee and was removed by aspiration with a needle and syringe under local anesthesia. At first aspiration a few days after the accident (which occurred on July 20, 1957) one teaspoon of blood was removed. A second and last aspiration on August 2, 1957, drew two teaspoons of blood. The knee was examined again in August of 1958, shortly before the trial, at which time Gross continued to complain of pain and discomfort. There was no objective evidence to support this complaint, and the doctor gave no medical theory as to why pain might still be present. He said simply that from a medical standpoint "a doctor is obligated to assume the authenticity of a complaint." Gross himself, who does farm work, testified that his knee catches and "gives down" on him when he walks, but that he is able to do his work anyway. He showed no loss of work or wages. In the sense that any condition still giving complaint after a year is "chronic," the doctor said he would describe it as chronic.

Lizzie Turner was 18 years old and in sound physical condition at the time of the accident, having never theretofore required medical treatment. She was riding in the rear end of the pickup truck and suffered a back injury which has bothered her ever since, particularly in bending. This interferes materially with her housework in caring for her widowed father and six brothers and sisters. She was examined by the doctor on the day of the accident and had no visible signs of injury, but complained of pain in the lower lumbar region on motion. A single lateral X-ray view of the lumbo-sacral spine appeared negative. During the ensuing year the physician attended her for other illnesses, the nature of which was not disclosed, but not for the back condition. His next examination concerning the injury in question was conducted on August 14, 1958, at which time, in view of her continued complaint of pain in the low back region, he made further X-ray pictures. They showed a scoliosis or lateral curvature of the spine. We continue with the following extracts from the doctor's testimony:

"Scoliosis may be congenital or traumatic. I can't state positively the cause. On the film there was a questionable type of compression fracture, or a questionable compression type fracture, I should have said, on the second and third vertebrae. This film was technically imperfect and I advised the patient to have a more definitive diagnosis study by a bone and joint specialist or an orthopedist. In her state I would say the final diagnosis has not yet been definitely established.

"Q. Doctor, this fracture between the second and third lateral vertebrae, did you feel the indication of such was serious enough to warrant an examination by a specialist in that field? A. Yes, sir; I stated that and I advised

the patient she needed further examination by a specialist.

"Q. Now Doctor, the spinal curvature of which you speak, is that such as it would cause pain? A. It would and at the line of weight bearing it would be somewhat off center. The patient might be subjected to no back pain with no unusual stress or even ordinary stress of manual labor. [Sic.]

"Q. Doctor Lewis, this patient has previously testified to to the jury that, prior to this wreck, she had never had any trouble of any kind with her back. Did you bring this out in obtaining her history? A. I have no previous record of having treated her for a back complaint.

"Q. In view of the fact of her statement to that effect, would you say that the pain to her back was traumatic or congenital?

"Mr. Cockrell: Object.

"Court: He may give his judgment about it.

"A. The degree of trauma has not been definitely established as I have previously stated. I would prefer to defer judgment until more diagnostic examination has been done and diagnosis is established.

"Q. You do think it is serious enough that further definitive examination should be done? A. Yes, I think the duration of the complaint alone would be reason for orthopedic examination. I am not an orthopedist.

"Q. Would you describe this complaint as chronic from its duration? A. A complaint of for more than a year or more might be medically termed chronic. That's a possibility."

And on cross-examination:

"Q. Now Doctor, as I understand it, you cannot make a definite statement that this woman's back injury was a result of this accident. Is that right? A. I stated that the lateral curvature of the lumbar spine is of questionable cause or origin. It could be that she was born with it or it developed itself or it could be as a result of trauma. That, I don't know. If, on definitive examination, if the fracture is confirmed I would assume with the history of the accident, if the fracture is confirmed that it was of traumatic origin.

"Q. As a matter of fact, from the X-ray film you have now and from your examination of this woman that you made, you cannot say there is a fracture. A. I say it is questionable and further examination and views are required, yes, sir."

In its analysis of several prior decisions on excessive damages for personal injury the opinion of this court in the case of Pagliro v. Cleveland, 1946, 302 Ky. 306, 194 S.W.2d 647, aptly pointed out that the facts are always different. As to the sufficiency of evidence to support instructions on and recovery for permanent injuries, we quote from Ingram v. Galliher, Ky.1958, 309 S.W.2d 763, 766, as follows:

"Some injuries, such as the loss or injury of a member of the body, need little or no professional opinion to prove their permanency; but where the injuries are internal great reliance must be had upon that character of evidence. It is an established rule that to warrant a recovery for permanent injuries, the future effect of the injuries sustained must be shown with reasonable certainty. The evidence must be positive and satisfactory, although it need not conclusively show the condition to be permanent."

It is our conclusion that the evidence in this case was insufficient to support a permanent injury instruction for either of the plaintiffs. In the case of Lizzie Turner it showed a distinct possibility of serious

injury from the accident, but even the causal connection fell short of reasonable probability, to say nothing of the permanency. It is regrettable that neither of the parties saw fit to require the further medical examination that could have removed the question from the realm of conjecture. Lizzie Turner came into court asking the jury to believe upon uncertain evidence what she had the power, and had been advised, to make certain. That circumstance scarcely strengthens her position in defending the verdict before this court.

Counsel for the appellees argues correctly that an erroneous instruction on permanent injuries is not prejudicial "where the amount of the verdict is not disproportionate or excessive, considering all the other proven elements of damage and injury." Hedges v. Neace, Ky.1957, 307 S.W.2d 564, 566; Combs v. Stewart, 1945, 301 Ky. 50, 190 S.W.2d 861. But in the absence of a satisfactory showing of what, if any, future effects of the injuries are reasonably probable we must judge the verdicts only on pain and suffering endured over the period of approximately 14 months, and on that basis we find them excessive under the type of proof offered in the case.

During the course of his interrogation by their counsel the doctor who treated and testified for plaintiffs, when asked the amount of his charges to Gross, replied as follows:

"The total is one hundred and four ($104.00) dollars. I should qualify that. I submitted a claim to the Insurance Company for ninety-four dollars and fifty cents ($94.50) to begin with but—"

Objection was raised immediately, followed by a motion that the jury be discharged. After discussion in chambers the motion was overruled. The parties apparently agreed with the trial court that an admonition would merely make matters worse, so none was asked or given. By avowal it was shown that appellant was covered by liability insurance and that Gross was not.

Appellant cites Kaufman-Straus Co. v. Short, 1949, 311 Ky. 78, 223 S.W.2d 367, where flagrantly prejudicial remarks by a doctor from the witness stand resulted in a verdict in the full amount demanded by the plaintiff in her complaint. We think, however, that the facts of this case bring it under the authority of Huls v. Dalzell, 1933, 252 Ky. 13, 66 S.W.2d 28, and Bowling Green-Hopkinsville Bus Co. v. Montgomery, 1939, 278 Ky. 837, 129 S.W.2d 535, wherein inadvertent references similar to the one in this case were held not sufficiently prejudicial to override the discretion of the trial court in refusing to declare a mistrial.

The causes are reversed and remanded for new trial on the issue of damages only.