Mabel Ann BORDERS et al., Appellants,

v.

Mearlene BORDERS, Appellee.

Court of Appeals of Kentucky.

March 6, 1964.

W. A. Johnson, Paintsville, for appellants.

Marcus Mann, Salyersville, for appellee.

CULLEN, Commissioner.

Appellee, Mearlene Borders, recovered judgment upon a jury verdict in the sum of $8,000 against the appellants, Mabel Ann and Johnnie Borders (her sister and brother) for personal injuries resulting from an automobile collision. Mearlene was a passenger in the back seat of Mabel's car, which was being driven by Johnnie. Mabel and Johnnie had driven to Mearlene's place of employment, a drive-in restaurant, to bring her home after work. The accident happened when Johnnie drove out of the restaurant premises into the path of an oncoming car.

Johnnie was a few days under 16 years of age and did not have a driver's license. However, there was evidence that he had been driving his brothers' and sister's cars for more than a year and had not previously been involved in any accidents.

The appellants contend that Mearlene should have been held contributorily negligent as a matter of law in riding with Johnnie, knowing that he was immature and had no license. The contention is not sustainable. The mere riding with an *unlicensed* driver has never been held to be contributory negligence; and in those cases where riding with an *inexperienced* driver has been held to be contributory negligence as a matter of law the inexperience of the driver not only was undisputed but it, rather than negligence of the driver, was the cause of the accident. See Cambron v. Bartlett, Ky., 333 S.W.2d 764; Richards v. Richards, Ky., 324 S.W.2d 400. Here, there was substantial evidence that Johnnie was not inexperienced. And the accident, which occurred when Johnnie attempted to enter the highway from a point where his view was partially blocked by a parked car, was due to negligence rather than his inability to handle the vehicle properly.

The appellants next contend that the trial court erred in refusing to give their requested instructions on contributory neg-

ligence. The first instruction would in effect have been a peremptory one, because it said that Mearlene could not recover if she knew that Johnnie was under 16 and did not have a driver's license. For the reasons hereinbefore stated, the court properly rejected the instruction.

The second instruction would have imposed on Mearlene the duty of lookout. Admittedly, Mearlene did not keep a lookout, because as Johnnie was driving out of the restaurant premises she was looking down at her coat and attempting to remove something from it.

■ We conceive the correct rule to be as stated in Lanning v. Brown, Ky., 377 S.W.2d 590, that in the absence of circumstances that would serve to put him on the alert the law does not require a passenger to maintain a lookout. Of course if the passenger *assumes the responsibility* of keeping a lookout he must make a reasonably careful lookout. Adkins v. Redwine, Ky., 339 S.W.2d 633; Donnell v. Pruitt, Ky., 265 S.W.2d 784. But in ordinary circumstances the initial responsibility is not imposed on him by law.

Some confusion may arise from the statement in Stephenson's Adm'x v. Sharp's Ex'rs, 222 Ky. 496, 1 S.W.2d 957, quoted with approval in Louisville & Nashville Railroad Co. v. Tomlinson, Ky., 373 S.W.2d 601, that when the passenger's "means of observing obvious dangers are the same as or better than those possessed by the driver and he fails to observe them, or observing them, fails to warn the driver, he is guilty of contributory negligence." This statement really is not inconsistent with the rule in the Lanning case, because by "obvious dangers" it means such dangers as should have been seen by a passenger who *was* looking or such dangers as would be calculated to arouse the passenger's attention through other senses than hearing. In the Stephenson case the automobile ran in front of a train in the face of warnings by an electric wigwag signal and bell at the crossing and repeated blasts of the train whistle. In the Tomlinson case the passenger actually undertook to make a lookout but simply failed to see the oncoming train. So the rule as stated in those cases is not to be construed as imposing an absolute, unqualified lookout duty on an automobile passenger.

■ In the instant case there was nothing in the circumstances to alert Mearlene to danger and therefore she did not have a lookout duty. Therefore the trial court properly refused to give the requested instruction.

■ The appellants argue that Johnnie was Mearlene's agent and therefore his negligence should be imputed to her so as to bar her recovery. There is no merit in that argument (even assuming that there could be considered to have been an agency relationship in the family courtesy trip) because the doctrine of imputation of negligence from agent to principal applies only as concerns the principal's liability to, or right to recover from, a *third person*—not as concerns the liability of the agent *to* the principal.

The transcript of evidence sets forth that after the jury was sworn the defendants moved to disqualify 8 named jurors for the reason that "they are related and recognize relationship with counsel for plaintiff." The appellants complain of the trial court's overruling of that motion.

■ There is nothing in the record to indicate the degree of the alleged relationship, or when it was discovered (however, it must have been discovered on the voir dire because the motion was made immediately after the jury was sworn). In the absence of a showing of the nature and degree of the relationship we cannot say that the trial court abused its discretion (which it had as respects implied bias arising from relationship) in overruling the motion. See Halleron v. Carrithers Creamery, Ky., 239 S.W.2d 92. Furthermore, the motion was too late be-

cause it appears that the defendants knew of the alleged relationships when the jury was accepted. See Croley v. Owens, 296 Ky. 51, 176 S.W.2d 84; Johnson v. Commonwealth, 311 Ky. 182, 223 S.W.2d 741.

We come now to the contention that the verdict of $8,000 is excessive. Mearlene was a 20-year-old girl, employed as a waitress at a drive-in restaurant. Her injuries consisted of the loss of several upper teeth; the loosening or "knocking back" of several lower teeth; a cut on the chin or lower lip which required stitches and which "itches and tingles like somebody jabbing a needle in it all the time" and which left a "knot," scar or "thick place" on the inside; some bruises; a lame knee which lasted for about two months; and a "sprained back." Mearlene testified that the false upper teeth replacing the teeth that were knocked out "don't fit right or something;" that her lower teeth are sensitive to hot and cold liquids; and that "I got my back hurt * * * and I can't do anything. It bothers me all the time." However, there was no evidence that the condition of her teeth could not be remedied, and despite the complaint of back trouble she returned to full-time work as a car-hop some four months after the accident and has continued in that work.

She was in the hospital for only two days and saw a doctor on only three occasions, the last time being some two weeks after the accident. She stayed home from work for about four months, losing around $240 of wages. Her medical and dental bills totalled at the most $368.

No medical testimony was offered.

 There being no evidence warranting a finding of any permanent impairment of earning capacity, there are no elements of damage here other than the small wage loss, the medical and dental bills, some temporary pain and suffering, a slight facial scar, and some continuing discomfort (not shown to be irremediable) from loss and loosening of teeth.

The verdict of $8,000 for these elements of damage strikes us as being excessive. Cf. Turner v. Johnson, Ky., 333 S.W.2d 749; Herald v. Gross, Ky., 343 S.W.2d 831.

 We are reversing the judgment because of excessive damages. We believe that the issue of liability was fairly tried, so a new trial will be confined solely to the issue of damages.

The judgment is reversed with directions that a new trial be granted solely on the issue of damages.