## Humphries et al. v. Gray.

June 17, 1947.

Ira D. Smith, Judge.

John T. King for appellants.

John O. Hardin for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

In October 1945, an automobile owned by Humphries, and driven by his wife, collided with a car owned

and being driven by Gray, plaintiff below, resulting in physical injuries and damaging his automobile. In his petition he charged gross and careless negligence in the operation of the Humphries' car, and sought judgment for $2,000 for permanent injury, $150 for past and anticipated medical service, and $300 damage to his automobile.

Answer admitted that "the automobile of defendants did collide with the car of plaintiff," but denied the charge of negligence and affirmatively plead that the collision was due solely to unavoidable accident, "in that the rod or drag link or that part of the vehicle which controls the steering of the vehicle, just as she was approaching the plaintiff gave way and broke and defendant lost control, without any negligence or carelessness on her part, and before she could stop same crossed the road and ran into the automobile of plaintiff."

It was plead that "they" did not know, nor could by the exercise of ordinary care have known, that the connection was going to break loose, or that she was going to lose control, and that she had no way of preventing the accident; that the accident could not have been prevented by the exercise of ordinary care, therefore they were not liable for the injuries. A reply joined issue.

Upon submission a jury returned a lump sum verdict for $900 in favor of plaintiff, and conforming judgment was entered; motion for new trial overruled, and appeal granted. While appellants set up seven or more grounds for new trial, they here contend: (1) That the verdict is excessive; (2) that it is not supported by, but is contrary to the law and the evidence, and the result of passion and prejudice. (3) The court erroneously overruled defendants' motion to be awarded the burden of proof, and (4) in refusing to give proffered instruction "B."

The accident occurred in mid-afternoon on a gravel county road. Appellee was driving an old 1934 model Plymouth. Mrs. Humphries was driving her husband's Buick in the opposite direction on what appears to have been a straightway section of the road. There were

no eye-witnesses other than Mr. Gray and Mrs. Humphries.

Mr. Gray testified that he saw the Humphries' car coming at a rapid rate; he estimated the speed at more than 50 miles per hour. He said when he saw her coming he pulled over until his wheels were off the road, and before the impact came to a standstill. He said as she neared him Mrs. Humphries ran over a small ridge of rock or gravel, and her car swerved to the left and collided with his car. When he first saw the Humphries' car it was about a quarter of a mile away, and running on her right side of the road. Gray was on his right side, and was first making about 30 miles. He said the rock or gravel pile was about 5 or 6 inches high and on Mrs. Humphries right side of the road.

The Gray car was damaged beyond repair, and he received considerable injuries; an injury to his eyes and to his head, particularly one ear. His injuries kept him from work for two months, and he was compelled to hire help at $5.00 per day. His eye and ear condition persisted, at least up to the time of trial in June 1946.

Dr. Perkins, who gave appellee first aid and treated him afterwards, said he was suffering from the shock and was nervous. He had abrasions and bruises on both legs; he had considerable trouble with one ear, and complained of deafness. He had a slight concussion, one eye was badly lacerated, cut to the bone, which was difficult to treat, and after healing left a scar. He had treated appellee shortly before the trial and found some inflammation of the ear and eye. Appellee says prior to the accident he did not have to wear glasses.

A school teacher whose school was about three miles from the point of accident, and who saw the Buick at the point of accident, saw the same car pass the school just a few minutes before the accident, and said (without objection) that it was going very fast; so fast that it caused her to remark "that lady must be in an awful hurry to get somewhere." Other witnesses who went to the scene shortly after the accident, described the positions of the cars, and testified that the tracks examined indicated that the Humphries' car wheels had struck the pile of rock or gravel, and went over to Gray's side of the road and struck his car. There is no proof of ir-

regular movement, or any movement, of the wheels of the Buick car prior to its striking the small rock pile, "which looked like it had been thrown up by the grader." A highway patrolman, who made investigation, expressed the opinion, based on the condition of the two injured cars, that the Buick, when the impact came, was traveling at a high rate of speed, "faster than should have been on a gravel road like that one."

Anticipating the defense, as set out in appellants' answer, Gray introduced an automobile mechanic, who after testifying that Gray's car was a total wreck, described that part of the steering gear known as the drag link, which runs from the sector gear to the rods which tie the front wheels together. He was of the opinion that if a car was in good repair, the drag link could not fall off. It would have to be badly worn to come off, if the "tie rods are worn the car would shimmy." He said that it would be improbable that the drag link would fall off without the operator "first having knowledge that something was wrong with the steering wheel."

Mrs. Humphries testified that she was on her way to Hopkinsville. She did not know how fast she was driving, but said she was not a fast driver, and thought she was making 25 miles; she was emphatic that she was not driving as much as 50 miles per hour. She saw Mr. Gray's car on his side of the road, and "it seemed like that I was just going to meet him and pass on. He was on his side as far as he could be, and I was on my side as far as I could be, and all at once my car seemed to lunge to the left. I applied my brake, but I struck him on his left hand side. I tried to turn the steering wheel back as hard as I could, with all the power I had, and I used the brake, and that is all there was to do." She explained on cross-examination that the steering wheel turned easily, but the wheels of the car did not respond; we gather from her evidence that the failure was just before her car struck the Gray car, and after it had struck the rock pile, since she says she applied her brake "as soon as she knew she was going across the road."

Mrs. Humphries was asked if she remembered seeing the pile of rock, and replied: "Really, I don't know about that; there is rock on both the roads I travel. I

don't remember them being there, but I have driven in the rock for twenty years. I am familiar with those ridges." Asked, "What do they do to a car if you hit one of those gravel ridges? A. You will swerve if you hit them; there is a pull there. Q. Did you notice a pull that day? A. No, I didn't even notice the ridge of gravel." Mrs. Humphries testified that before her car started across onto Gray's side of the road she did not notice anything wrong with the steering of the car. This would lend some color to an inference that the sudden striking of the rock pile had some effect on the steering apparatus.

Mrs. Humphries was slightly injured by the impact, and the car was damaged to the extent of a $72 repair bill. Mr. Humphries testified that shortly before the accident he greased the car and noted that the drag link was in good condition. Aside from this appellant introduced a number of auto mechanics who described the mechanism and operation of rods and drag links as they affected the turning of the wheels of a car. They stated that when a drag link breaks, or comes off, it gives no previous warning of being loose, or defective. One mechanic who brought in the Buick car, said on examination that the tie rods were loose, and the "drag link was off." On cross-examination this witness said that if a car was going at a fast speed, and the drag link was loose, the running of the car into a ridge of gravel could cause the drag link to come off. The mechanic who repaired the car found the drag link line "disconnected," and he thought the car could not be driven in that condition. He said he had seen quite a few cars where the drag link came loose as a result of an accident.

Taking up the contention that the verdict is excessive, coupled with (2) that it was contrary to law and evidence, the result of passion and prejudice, we fail to find any possible evidence of passion or prejudice, at first blush or otherwise. As to excessiveness, if the jury was correct in concluding that the evidence warranted a finding of negligence, then the verdict was modest. We find a stipulation to the effect that the ceiling price on Gray's car was $300. The car was reduced to junk. Appellee had paid $75 for medical services. For two months he was unable to work and employed help at $5 per day. He was still unable to perform

his usual duties, and suffered from the eye and ear trouble. There was no contradiction of his testimony on these points, and if the jury in its verdict allowed $300 for loss of his car and $75 expended for medical service, the balance could not in any sense be considered unreasonable or excessive.

As to whether the verdict was contrary to the law and evidence, it appears to us that the jury could very well have concluded that the driver of the Humphries' car was operating the car at an unreasonable rate of speed over what appears to have been a narrow gravel road. It could have been reasonably concluded that the operator, driving even at a reasonable speed did not "consider the condition of the road," and should have avoided the pile of rock or gravel. Ordinary care requires that the driver of a motor vehicle observe and consider the condition of the road as well as consequences that might flow from carelessness. Tente v. Jaglowicz, 241 Ky. 720, 44 S. W. 2d 845. The jury from the evidence before it could reasonably conclude that any trouble to the drag link, or any part of the steering gear, occurred from the striking of the rock pile, causing the sudden swerve, hence futile attempt to pull the car to the right. As to the law, we have read the instructions and they very fairly gave the law as to the duties of the operator of the Buick car, and likewise presented appellants' theory of inevitable accident.

There is some complaint in brief of the incompetency of the evidence with regard to prior speed of appellants' car, particularly the school teacher's testimony. However, there was no objection and it was accepted without cross-examination. Incompetent evidence was not set up as a ground on motion for new trial. It is too late to raise the objection on appeal.

The record shows that after swearing of the jury, counsel for appellants "entered a motion that the burden of proof be placed upon him," the court overruling. Counsel argues that such ruling was prejudicial error. He bases that contention on the fact that the answer of appellants' admitted the collision, and this had the effect of a plea of avoidance. Appellant overlooks the fact that appellee had charged negligence in the operation of appellants' car, and that while the collision was ad-

mitted, negligence was specifically denied, and there was no plea of contributory or any negligence on the part of Gray. The only issue was negligence, and the extent of injury and amount of damages. The burden was on Gray to establish the charge.

Counsel offered, and the court rejected, instruction "B" which as tendered would have advised the jury that if "the collision was caused by the sudden or unexpected loosening or breaking of the rod or drag link on defendants' car, and that by reason thereof the driver lost control and could not prevent same from crossing the highway and striking plaintiff's car, then the defendants would not be liable for any damage to his car."

This did not correctly state the law of unavoidable or inevitable accident arising from a defect in the vehicle. If the defect was, or could have been known to defendants by the use of ordinary care, then the existence of the defect at the time of the accident, would not excuse. The court correctly took this view, since in instruction No. 2 he gave in substance, if not in words, the offered instruction but added: "Unless the jury believe from the evidence the defendants knew or could have known by the exercise of ordinary care that the steering mechanism or drag link was defective or in a dangerous condition in time to have prevented the collision."

A careful review of the record fails to disclose any prejudicial error, therefore the judgment is affirmed.