**William M. JACKSON, (Plaintiff) Appellant,**

v.

**SKELLY OIL COMPANY, a Corporation, (Defendant) Respondent.**

No. 52584.

Supreme Court of Missouri, En Banc.

April 10, 1967.

William A. Collet, Kansas City, for appellant.

Robert S. McKenzie, McKenzie, Williams, Merrick, Beamer & Stubbs, Kansas City, for respondent.

HOLMAN, Judge.

On April 9, 1962, a collision occurred between plaintiff's automobile and a tractor-trailer tank truck belonging to defendant. Plaintiff thereafter filed this suit seeking to collect damages resulting therefrom in the sum of $10,000. A trial resulted in a verdict for defendant. Plaintiff appealed to the Kansas City Court of Appeals. That court adopted an opinion reversing the judgment and remanding the case for a new trial. Upon defendant's application we ordered the case transferred to this court. It will be determined here "the same as on original appeal." Civil Rule 84.05(h), V.A.M.R. and Mo.Const. Art. V, § 10, V.A.M.S.

The collision involved occurred on an access ramp to the west end of the Intercity Viaduct which connects Kansas City, Kansas, and Kansas City, Missouri. Near the access ramp Armstrong Street runs east and west. It intersects north-south Fourth Street. Approximately one block north of Armstrong is the point where the access ramp curves to the right (east) from Fourth Street to the viaduct.

At the time in question plaintiff was going from his place of employment in Kansas City, Kansas, to his home in Kansas City, Missouri, and was driving a 1957 Plymouth automobile. The defendant's vehicle consisted of a tractor pulling a 49-foot tank trailer and was being driven by Marshall W. Hatfield. Plaintiff was the only eyewitness to the collision. The facts relating to it come from his testimony and from the testimony of Hatfield and

a police officer concerning statements made by plaintiff shortly after the collision.

Plaintiff testified that he was proceeding west on Armstrong and stopped at the four-way stop intersection with Fourth Street; that he then turned right and drove north on Fourth Street for a short distance, and then entered the access ramp and proceeded to a point about 25 feet from the point of entry onto the Intercity Viaduct; that he was in the right lane and his car was almost against the right curb; that he had stopped because traffic on the ramp had stopped to yield to traffic on the viaduct; that the defendant's tractor-trailer then came alongside his car and as it passed a valve box located about the middle of the trailer hit his car, and immediately thereafter the right back tire of the trailer also hit it; that the impact caused damage to his left front fender and other damage farther back on the left side of his car; that defendant's truck did not stop but entered the viaduct and continued to cross it; that he followed the truck in his car and was able to come alongside the truck near the east end of the viaduct; that after he motioned to the driver the defendant's truck stopped and he told Mr. Hatfield about the collision; that they examined the truck and found red paint on the valve box and on the rear tire which matched the paint on his car; that they then went back to the Kansas end of the viaduct where Hatfield called the police and they made a report to the police officer. Plaintiff further testified that the ramp was wide enough for two cars to operate side by side; that his speed did not exceed 15 miles per hour as he proceeded up the ramp and that he was completely stopped at the time of the collision. He stated that he was not aware of the fact that on a sharp curve the rear wheels of a trailer "cut across and can't follow the path of the wheels of the tractor."

The police officer testified that he was called to the scene of the collision and interviewed both of the drivers. He quoted plaintiff as saying that "he was going north on Fourth Street and was in the turn going onto the Intercity Viaduct; * * * was alongside the right side of the trailer when he saw this trailer moving over, so he stopped, when right rear of trailer swung over and hit his left front fender. * * * that when he first noticed there was any danger of an accident he was going about ten miles an hour."

Mr. Hatfield testified that he never saw plaintiff's car and did not know of the collision until plaintiff stopped him and told him about it; that he and plaintiff went back to the scene of the collision and plaintiff pointed out where it occurred; that plaintiff stated that the collision occurred near the point where the ramp left Fourth Street which would be approximately 80 feet from the point it enters Intercity Viaduct; that plaintiff further stated, "he couldn't get by me. * * * he was behind me and stopped on this curve. When I hit the curve he went up behind me on the curve."

In describing his own actions Mr. Hatfield stated that he stopped at the four-way stop sign and then turned to his right on Fourth Street; that at that time there was no one on his right and when he made his turn from Fourth Street onto the ramp his tractor was in the left lane and the back end of his trailer was in the right lane; that the ramp was not wide enough for a tractor-trailer and a car to proceed alongside each other at the same time; that in making the curve on the ramp his trailer would occupy at least half the right lane.

As will be noted from the foregoing the principal conflict between plaintiff's and Hatfield's testimony as to what plaintiff said is that plaintiff placed the point of collision near the east end of the ramp while Hatfield said that plaintiff, in describing the collision shortly after it occurred, had stated that it happened near the west end or entrance of the ramp; and plaintiff testified that his car was

ahead of defendant's tractor-trailer and he had stopped and was struck as defendant was passing him, while Hatfield quoted plaintiff as saying that he was behind the defendant's vehicle and had overtaken it and was apparently trying to pass at the time the trailer came over into the right lane and struck his car.

Plaintiff's case was submitted upon a finding of defendant's negligence in that its driver: "(a) moved into plaintiff's lane at a time when it was not reasonably safe to do so, or (b) failed to keep its vehicle under proper control, or (c) failed to keep a careful lookout."

The sole contention of error upon this appeal is that the court erred in giving Instruction No. 5, at the request of defendant, which reads as follows:

"Your verdict must be for the defendant (whether or not defendant was negligent) if you believe, First, plaintiff either (a) failed to keep a careful lookout, or (b) drove alongside of the moving Skelly truck while both vehicles were on the access ramp; and Second, plaintiff's conduct in any one or more of the respects submitted in paragraph First was negligent; and Third, such negligence of plaintiff directly caused or directly contributed to cause any injuries and damage plaintiff may have sustained."

■ Plaintiff says the court erred in giving that instruction because there was no evidence to support either of the grounds of negligence submitted therein. In his motion for new trial he stated the contention as follows:

"The Court erred in giving at defendant's request Instruction No. 5 submitting to the jury the issue of plaintiff's alleged contributory negligence in view of the fact that there was no evidence in the record upon which the jury could find that plaintiff was contributorily negligent."

It will therefore be seen that he does not complain of the form or content of the instruction but only that the evidence did not support it. In that situation we need not (and do not) approve or disapprove the form and content of the instruction.

■ In determining whether defendant's Instruction No. 5 was supported by evidence we must consider the evidence in the light most favorable to defendant and give it the benefit of any favorable inferences that may reasonably be drawn therefrom, and disregard plaintiff's evidence unless it tends to support the grounds of contributory negligence submitted in the instruction. Highfill v. Brown, Mo.Sup., 340 S.W.2d 656.

■ Considering in reverse order the two items submitted we think it is obvious that the evidence supported item (b) which was that plaintiff drove his car alongside the moving truck while both vehicles were on the access ramp. Defendant's driver, Hatfield, and the police officer both testified that plaintiff made statements indicating that he was driving his car alongside the trailer when he noticed that the trailer was moving over toward his car.

■ We have also concluded that the evidence supported item (a) of the instruction, i. e., that plaintiff "failed to keep a careful lookout." Plaintiff says the evidence did not support the submission because all of the evidence indicates that he saw the trailer and stopped his car before it was struck. We agree that such was the evidence but we do not agree that such evidence would bar the submission.

In considering the subject of lookout we have said that the "object and purpose of the strict requirement that persons operating motor vehicles keep a proper lookout upon public streets and highways is that they may acquire knowledge of the presence of other persons and objects on such streets and highways, and an awareness of dangerous situations and conditions. It is only

because of that knowledge and awareness that the operators of motor vehicles may take appropriate precautionary measures to avoid injury to themselves and other persons within an existing area of peril." Miller v. St. Louis Public Service Co., Mo.Sup., 389 S.W.2d 769, 771. The Virginia Supreme Court has stated the rule in this fashion: "The law requires the driver of a car to keep a proper lookout, in order that he may avail himself of what the lookout discloses to prevent injury to himself as well as to others. Keeping a lookout is without avail unless one utilizes the information thereby secured. One who keeps a lookout, and fails to take advantage of what it discloses, is as guilty of negligence as one who fails to keep a lookout." Yellow Cab Co. of Virginia v. Gulley, 169 Va. 611, 194 S.E. 683, 686. See also, 2 Blashfield Auto Law 3rd Ed., § 104.1, p. 266, wherein it is said that "The duty of a motorist to maintain a lookout involves not only the physical act of looking but also a reasonably prudent reaction to whatever danger has been disclosed * * *." Similar rules are stated in 60 C.J.S. Motor Vehicles § 284 c; Penoso v. D. Pender Grocery Co., 177 Va. 245, 13 S.E.2d 310, Humphries v. Gray, 305 Ky. 206, 203 S.W.2d 8, and Bowers v. Treuthardt, 5 Wis.2d 271, 92 N.W.2d 878.

This court has also said that in fulfilling his duty to keep a careful lookout the operator of the vehicle is "required to look in such an observant manner as to enable him to see what a person in the exercise of the highest degree of care for the safety of himself and others would be expected to see under similar circumstances." Faught v. Washam, 365 Mo. 1021, 291 S.W.2d 78, 82.

As indicated by the rules heretofore quoted it is our view that plaintiff could not satisfy the duty of keeping a careful lookout by looking and seeing the trailer on the access road. There was evidence that the access road was narrow for two-lane traffic (from 12 to 15 feet wide) and that it curved sharply for a considerable distance from the point where it left Fourth Street. Although plaintiff said he did not know it at the time, all parties now concede that plaintiff's car and the tractor-trailer could not traverse that curve side by side without colliding. That resulted from the fact that by reason of the sharp curve the rear part of the trailer would not follow the path of the wheels of the tractor but would cut across and occupy a substantial part of the right lane.

In view of the foregoing evidence we think a jury reasonably could have found that if plaintiff had been keeping a careful lookout at the time his car overtook the trailer and was being driven near the rear thereof he would not only have seen the trailer but would have become aware of the dangerous situation into which he was about to enter and hence, in the exercise of the highest degree of care, would have refrained from attempting to pass the trailer or to otherwise drive alongside it.

It follows from what we have said that the favorable evidence was sufficient to support the submission of plaintiff's contributory negligence in failing to keep a careful lookout. Since we have ruled that the evidence supported both items submitted in Instruction No. 5, and since that is the only contention of error plaintiff has suggested in regard thereto, we accordingly rule that the court did not err in giving that instruction.

The judgment is affirmed.

All concur.