**Albert G. HOWLAND and Viola Howland,
Appellants,**

**v.**

**Don Leroy WEST and Fleming Foods of
Missouri, Inc., Respondents.**

**No. 57480.**

Supreme Court of Missouri,
Division No. 1.

April 8, 1974.

Douglas, Douglas & Douglas, Neosho,
for appellants.

John R. Martin, Joplin, for respondents.

HIGGINS, Commissioner.

Appeal (taken prior to January 1, 1972) from judgment for defendants entered pursuant to jury verdict for defendants in plaintiffs' two-count action for $50,000 damages for personal injuries and $10,000 damages for loss of consortium.

This action arose from a collision on U. S. Highway 71 in Newton County around 6:00 a. m., March 16, 1970. Plaintiff Albert G. Howland was driving a 1960 International pickup truck in a northerly direction; defendant West was driving a tractor-trailer unit belonging to defendant Fleming Foods of Missouri, Inc., in a southerly direction.

The only question is whether there was evidence to support Instruction 9 (MAI 32.01) given on behalf of defendants:

"Your verdict must be for the defendants whether or not Don Leroy West was negligent if you believe:

"First, Albert G. Howland either: failed to keep a careful lookout, or drove at an

excessive speed, or drove on the wrong side of the road; and

"Second, Albert G. Howland's conduct, in any one or more of the respects submitted in paragraph First, was negligent; and

"Third, such negligence of Albert G. Howland directly caused or directly contributed to cause any damage plaintiffs may have sustained."

In determining whether Instruction 9 was supported, the evidence is considered favorably to defendants with a disregard for plaintiffs' version of the facts unless it tends to support the submission. Rickman v. Sauerwein, 470 S.W.2d 487, 489[1] (Mo. 1971).

Plaintiff Albert G. Howland lived with his wife, plaintiff Viola Howland, about five and one-half miles northwest of Neosho, Missouri. Mr. Howland placed the collision scene at a point three and three-quarter miles north of his home, eight miles north of Neosho and ten miles south of Joplin where Highway 71 runs generally north and south. The collision occurred on a curve to the northeast, i. e., to plaintiff's right.

Mr. Howland left his home shortly after six o'clock in the morning and drove north toward Joplin. It was snowing and snow covered the highway to depths of eight to twelve inches. When he came onto the highway he could not see the center line, shoulder, or the road itself. It was dark; his headlights and windshield wipers were in operation.

Mr. Howland saw defendants' truck when it was 200 to 350 feet to the north. He saw nothing unusual about its approach. It was on its right-hand side of the road; it did not slip, slide, accelerate, or change direction. Mr. Howland noted the tracks of vehicles ahead of him but he paid no attention to them. He passed the cab of defendants' rig and then noticed it coming closer to him. His side rear-view mirror came off from contact with the left side of defendants' trailer, and his ultimate collision was his left front side and wheel with the trailer's tandem wheels. Mr. Howland placed his vehicle at the time of impact as having the two right wheels on the shoulder, about six or eight feet from the center of the ditch to his right. After impact, his vehicle came to rest with its rear in the ditch and its front headed west. Mr. Howland stated that when about three quarters of a mile from the collision, "the road has a tendency to float one way or the other so I have always taken this right-hand shoulder at that point which is about 100 yards south of the point of impact. * * * I changed gears to second so I could hold my steady momentum up and without either accelerating or losing my speed and that is the way it happened." His pickup was not equipped with snow tires or chains, and he drove at 30 to 35 miles per hour. He could not say that his wheels went down through the snow to the pavement but he could feel the vibration from rough spots on the shoulder.

Defendant Don Leroy West left Joplin about 5:30 a. m. The highway and shoulders were covered with snow. He was able to follow tracks of vehicles preceding him. He was on his side of the road at all times, judging his position by observing the ditch on his right-hand side of the road, and traveling about 25 miles per hour. At the collision scene he was negotiating the slight curve to his left. It was dark, he was using headlights, and he saw Mr. Howland's pickup about 400 feet away. When the pickup came by the cab of his truck, it appeared it would pass although extremely close, and, instead, headed straight toward his trailer. Prior to the collision, Mr. West had not accelerated, skidded, or used his brakes. After impact, the unit started to jackknife and, by acceleration, Mr. West was able to straighten it.

Jerry Lasater, investigating highway patrolman, received notification of the accident at 6:25 a. m. He described the highway as having twenty-two feet of pavement, an east shoulder of ten feet, and a ditch on the east side with its center ten

feet from the east edge of the shoulder. The collision occurred where the road goes up hill to the north and curves to the northeast. As he drove to the scene he had to follow tracks of a preceding vehicle because it was snowing so hard and there was so much snow on the highway that he could not see the centerline or the shoulder. The snow ultimately reached depths of 24 to 30 inches in the area. Visibility was very limited due to the snow. Trooper Lasater was unable to locate any debris on the highway or shoulder by which to determine a point of impact.

Ray Spiva was following defendants' tractor-trailer at a distance of 300 to 400 feet. He did not know if he was on the road but followed the tracks of the other vehicle. He could not see the rig ahead at all times because it was snowing so hard. He did not see the pickup as he traveled down the highway to where Mr. West stopped because he was watching the road. He saw it only when he went back to where it came to rest after the collision.

Mrs. Howland was notified of the collision about 8:00 a. m., but could not get to the hospital in Joplin to see her injured husband due to the snow. It was two or three days before her road was opened so she could get to Joplin.

Citing Hecker v. Schwartz, 426 S.W.2d 22 (Mo.1968); Ryan v. Manheimer, 435 S.W.2d 366 (Mo.1968); Markle v. Fallek, 424 S.W.2d 756 (Mo.App.1968); Calvert v. Super Propane Corp., 400 S.W.2d 133 (Mo.1966), and Richman v. Sauerwein, supra, but without indicating how they apply, appellants argue that there is no showing that Mr. Howland's speed caused or contributed to cause the accident, or that it happened because Mr. Howland failed to keep a careful lookout. They assert the cause was Mr. West's inability "to control the trailer as the truck and trailer were going down the incline on the slight curve on a snow covered road."

Within the purview of the authorities, this record, including the evidence, supported Instruction 9.

It is noted first that appellant's argument does not go to the question of evidence that plaintiff drove on the wrong side of the road. Consequently, that issue would appear to be abandoned. In this same connection, plaintiffs' motion for new trial recognized the presence of evidence that plaintiff drove on the wrong side of the road and made no complaint against that part of the instruction. Consequently, that issue is not for review. Rules 70.02, 79.03, V.A.M.R.; Chambers v. Kansas City, 446 S.W.2d 833, 840 (Mo.1969).

With respect to plaintiff's failure to keep a careful lookout:

There is evidence to show that there was a curve in the highway to plaintiff's right at the scene of the collision, and to show that defendant West was negotiating that curve as it ran to his left. Absent is any showing that plaintiff veered to the right or that he was negotiating the curve to his right. Both Mr. West and Mr. Spiva, as they proceeded south, appreciated the problem of locating the highway and followed tracks of preceding vehicles; Mr. Howland did not follow preceding tracks, concentrating instead upon maintaining his momentum. Mr. Howland saw defendants' rig when it was 200 to 350 feet north of him; but there is no evidence of a continuing lookout for the rig in the interval until he passed its cab and saw the trailer.

In Jackson v. Skelly Oil Co., 413 S.W.2d 239, 243 (Mo. banc 1967), the court adopted this statement of the law on lookout: " 'The law requires the driver of a car to keep a proper lookout, in order that he may avail himself of what the lookout discloses to prevent injury to himself as well as to others. Keeping a lookout is without avail unless one utilizes the information thereby secured. One who keeps a lookout, and fails to take advantage of what it discloses, is as guilty of negligence as one

who fails to keep a lookout'. * * * 'The duty of a motorist to maintain a lookout involves not only the physical act of looking but also a reasonably prudent reaction to whatever danger has been disclosed * * *.' "

And in Watterson v. Portas, 466 S.W.2d 129, 131 (Mo.App.1971), the court held that to make a submissible case on failure to keep a careful lookout, "it is unnecessary, and generally impossible, * * * to produce direct evidence the defendant was not looking. * * * A jury may disbelieve a defendant's testimony that he was looking carefully and conclude otherwise by reasonable inferences from the evidence." See also Welch v. Sheley, 443 S.W.2d 110 (Mo.1969).

Consistent with these statements of the law, the jury was free to disbelieve Mr. Howland's testimony that he was driving partly off the highway. It reasonably could find that Mr. Howland failed to keep a careful lookout to make certain of his position on the highway, and that such failure caused his collision with defendant West. The jury reasonably could find that he caused the collision with defendants' vehicle by failure to keep a careful lookout to appreciate the curve to his right in the highway. The jury also reasonably could infer from the conflicting evidence that Mr. Howland did not know where he was with relation to the highway and defendants' rig due to his attention being diverted to concerns other than his careful lookout, such as maintaining his momentum.

With respect to plaintiff's excessive speed:

■ Whether a particular speed, not unlawful by reason of law, is excessive depends upon the condition of the highway and all the circumstances and conditions existing at the time in question. Calvert v. Super Propane, supra, 400 S.W.2d 1. c. 139; Steele v. Goosen, 329 S.W.2d 703, 711 (Mo.1959).

Mr. Howland was driving his pickup in deep snow without chains or snow tires while falling snow and darkness limited his visibility. From the times in evidence it is shown that he traveled three and three-fourths miles under such conditions in five to twenty minutes. He placed his speed at 30 to 35 miles per hour, proceeding upgrade on a curve after having noted defendants' southbound rig. His concern was his momentum and he had shifted to second gear to maintain it. The jury reasonably could find under these circumstances that Mr. Howland's speed was such that he could not stop, turn, or otherwise control his pickup to avoid the collision, and thus have caused or contributed to cause the collision.

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.